Michael **DANIELS**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 49S00–8601–PC–33.

Supreme Court of Indiana.

Sept. 23, 1988.

Rehearing Denied Dec. 21, 1988.

Richard A. Waples, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

On August 21, 1979, appellant was convicted, in a trial by jury, of four counts of robbery, one count of attempted robbery, and one count of felony murder. On September 14, 1979, appellant was sentenced to twenty years for each robbery, fifty years for the attempted robbery, and to death for the felony murder. On September 9, 1983, appellant's convictions and sentences were upheld on direct appeal. *Daniels v. State* (1983), Ind., 453 N.E.2d 160. Appellant filed a petition for post-conviction relief on February 6, 1984. The trial court entered findings of fact and conclusions of law on February 21, 1985, and denied appellant's petition.

On appeal from the trial court's denial of his petition for post-conviction relief, appellant raises twelve issues: (1) whether the admission of Timothy Streett's identification testimony violated appellant's rights to cross-examination, confrontation, and due process of law, as a result of the hypnosis of Timothy Streett, (2) whether the charges against appellant should have been dismissed due to the impermissible amendment of these charges; (3) whether appel-

lant received ineffective assistance of counsel; (4) whether it was error to refuse appellant's tendered instruction on voluntary manslaughter; (5) whether the prosecutor's final argument was improper and prejudicial; (6) whether the trial court erroneously instructed the jury concerning their options regarding the death penalty; (7) whether the death penalty is unconstitutional as violative of Art. 1, § 18 of the Indiana Constitution; (8) whether death by electrocution is cruel and unusual punishment and violative of the Eighth Amendment to the United States Constitution and Article I, § 16 and § 18 of the Indiana Constitution; (9) whether the post-conviction court erroneously failed to provide appellant with expert assistance to investigate his claim that a pattern of racial discrimination pervades homicide prosecutions and capital sentences; (10) whether appellate waiver rules should be ignored in this case; (11) whether the failure to file probable cause affidavits with the information was error; and (12) whether the charged offenses were improperly joined for trial.

Appellant was convicted of the felony murder of Allen Streett. At the time of his death Streett and his fifteen year old son, Timothy, were shoveling snow from the driveway of their home when two individuals demanded their wallets. Allen Streett was shot and killed after stating his wallet was inside and taking a step backwards. The assailants then took Timothy's wallet and left.

At trial, Timothy Streett positively identified appellant as the person who shot his father. Appellant now urges that he was denied his right to confrontation and due process of law by this eyewitness identification. The foundation for his argument is the fact that Timothy Streett was hypnotized shortly after the murder and prior to his identification of appellant.

The murder occurred on January 16, 1978. Timothy Streett was hypnotized on January 19, 1978. At the time of the hypnosis, appellant was not a suspect. He was subsequently arrested and appeared in a line-up on January 27, 1978. At that time, Timothy Streett identified appellant as the man who shot and killed his father. He also positively identified appellant as such at trial.

While Timothy Streett was hypnotized, he was shown seven photographs. From these photographs he identified a picture of Franklin Welch, Jr., as possibly being the man with the gun. He also enlarged his description of that individual. The police report reflects that after the crime Timothy gave a general description of a "Black Male 5-10 Slender Build, 24-25 yrs Blue jeans, Brown leather coat." Under hypnosis he described the gunman as 5'8" to 5'10", 140 to 150 pounds, medium build, dark complected, oval face, brown eyes and black hair. He further assisted a police artist in drawing a composite sketch, but did not believe the resulting sketch much resembled the gunman. At the line-up held several days later, Franklin Welch, whose photograph was selected as a "possible" suspect, was present along with appellant, but was not identified by Timothy Streett. The jury was never made aware of the hypnosis.

Appellant urges that hypnotically derived or renewed testimony is inherently unreliable and denies the right to meaningful confrontation and effective cross-examination. He is correct. *Pearson v. State* (1982), Ind., 441 N.E.2d 468. *Strong v. State* (1982), Ind., 435 N.E.2d 969. However, the mere fact that a witness has undergone hypnosis will not preclude that witness from testifying. *Pearson, supra.* The determinative factor is whether or not the witness has a sufficient basis for the identification independent of the hypnosis. *Pearson, supra; Strong, supra.*

It is claimed that Timothy Streett's identification of appellant was a direct result of memory enhancement during hypnosis and as such was impermissibly admitted into evidence. At the post-conviction hearing, appellant presented the expert testimony of Dr. Eugene E. Levitt, a clinical psychologist and professor at the Indiana University School of Medicine. He was qualified as an expert witness in the forensic use of hypnosis. The gist of Dr. Levitt's testimony and appellant's argument is that Timo-

thy Streett's identification of appellant as the triggerman was the result of hyper-compliance with the hypnotic suggestion that he be "positive" in any identification he made. It is essentially argued that prior to hypnosis Timothy Streett was equivocal about whether or not he could make a positive identification and that his doing so at trial was purely a result of the hypnosis.

■ Contrary to appellant's assertions, there is no persuasive evidence that appellant's identification was the result of hypnosis. He had previously been unable to "be sure" in any identification attempts. He had only gone so far as to state that it was "possible" an individual could have been the gunman. However, he had also not had the opportunity to identify appellant before. Upon viewing the line-up in which appellant and Franklin Welch, the individual picked as a "possible" suspect under hypnosis appeared, Timothy positively identified appellant as the gunman. Any hesitation he had felt previously vanished upon confrontation with appellant. This ability to be "positive" is explained as easily by the fact that this was the first time Timothy came face to face again with the man who shot his father as it is by a very tentative post-hypnotic suggestion.

It is difficult to perceive how there could have been an attempt by police, through the use of hypnosis, to improperly suggest that Timothy identify appellant. The police had no suspects at the time of the hypnosis. They were unaware of appellant's apparent involvement. The enhanced description obtained by way of hypnosis, and resulting from questions designed to elicit certain details which may or may not have been noticed, did not fit appellant. A connection between the hypnotic session and Timothy Streett's identification of appellant as the assailant has not been shown.

## II.

On January 26, 1978, an information under Cause No. 1078 90144 was filed in Marion County Municipal Court charging appellant with the murder of Allen Streett. On February 15, 1978, an information charging appellant, Kevin Edmonds and Don Cox with the felony murder of Allen Streett was filed in Marion County Criminal Court under Cause No. CR78 047 D.

■ A statute in existence at the time these informations were filed, I.C. 35–3.1–1–5 (repealed September 1, 1982), prohibited amendment of a criminal information when such amendment changed the theory of prosecution or the identity of the offense charged. Appellant urges that this provision was violated by the February 15, 1978 filing of an information charging felony murder in the course of a robbery, when the first information charged murder. An amendment of this nature would have been impermissible under the former I.C. 35–3.-1–1–5. However, there was no amendment in this case.

Appellant urges that since the case was "bound over" from municipal court to criminal court, the February 15, 1978 information constituted an amendment of the January 26, 1978 information. This argument is not persuasive. The information filed on February 15, 1978 contained six counts, felony murder, attempted robbery and four counts of robbery. The filing of this information was followed by a determination that probable cause existed for the issuance of an arrest warrant, the issuance of the warrant, and a determination that appellant should be held without bond.

Subsequently, Attorneys Cobb and Bowman entered an appearance on behalf of appellant and arraignment was scheduled for February 27, 1978. On that date appellant waived arraignment and pled not guilty.

The February 15, 1978 filing of the information for Felony Murder was clearly not an "amendment" of the Municipal action and therefore did not fall within I.C. 35–3.-1–1–5. It was treated in every way as a new filing. Appellant was incarcerated as a result of the municipal court action. When this information was filed a new probable cause determination and a new bond determination were made. The case was then set for arraignment. While the procedure of "binding over" resulted in two separate filings in two separate courts,

it did not result in an amendment of the original pleading. There is no evidence that the pleading was amended. Rather, it appears that based on that pleading a new action was commenced in criminal court and all of the inherent procedural safeguards and requirements were then performed.

■ It should also be noted that even if this had been considered to be an amendment, we see no benefit which would have enured to appellant. If the trial court had considered this a single cause of action and denied an attempt by the State to amend the information from murder to felony murder, the State could have simply dismissed the case and refiled it alleging felony murder. Appellant could have been tried on a charge of felony murder regardless of how these filings were classified.

### III.

Appellant urges that the acts of commission and omission by counsel, during pretrial, trial, sentencing and appeal, denied him his right to the effective assistance of counsel. In analyzing ineffective assistance claims, the following is considered:

"The proper standard for attorney performance is that of reasonably effective assistance. * * * * Judicial scrutiny of counsel's performance must be highly deferential. * * * * * * the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. * * * A * * * claim * * * has two components. First the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense."

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Eight specific acts or omissions are specified by appellant as examples of conduct constituting ineffective assistance of counsel.

### A.

Initially, the failure to challenge the identification testimony of Timothy Streett due to the fact he underwent hypnosis is raised as a significant omission by trial counsel. It is further alleged that the error was compounded by counsel's failure to inform the jury that Timothy had been hypnotized, had only identified appellant after hypnosis, and had made a "possible" identification of another man while hypnotized.

■ It has already been determined that Timothy Streett had an independent basis for his identification of appellant untainted by the hypnosis session. Therefore, any error in failing to attempt to suppress the identification due to the fact of hypnosis was harmless. Generally, however, the jury is made aware of the hypnosis session and any incongruities between pre-hypnosis, hypnosis, and post-hypnosis recollection. *Pearson*, 441 N.E.2d at 473. In this case the jury did not know that Timothy Streett had been hypnotized.

■ The lawyers who represented appellant at trial testified that they believed that the testimony of Kevin Edmonds, one of the participants in the crime, identifying appellant as the triggerman, was the key to the case. Discrediting Edmonds was the primary goal of the defense. They indicated a belief that Timothy Streett's identification testimony was not of great importance in relation to that of Edmonds. Further, the attorneys indicated they believed that Timothy was on the verge of breaking down on the witness stand and felt any attempt to discredit his identification at that time would appear as if they were attacking the victim's son.

Clearly a decision was made to concentrate on discrediting Edmonds rather than Timothy Streett in order to avoid alienating the jury with extensive cross-examination of the victim's fifteen-year old son. The propriety of this decision will not be questioned based on hindsight. Even if the strategy were poor, it does not rise to the level of ineffective assistance.

### B.

■ Appellant urges that trial counsel was ineffective due to failure to object to

allegedly improper argument by the prosecutor at the sentencing phase of the trial. Most of the allegations concerning the prosecutor's conduct were addressed on direct appeal on the merits and were also found to have been waived for failure to raise the objection at trial. Nothing here alleged rises to the level of ineffective assistance. Whether or not to raise objections to the opposition's opening or closing argument is a matter of strategy. Whether the behavior of the prosecutor amounted to fundamental error will be addressed later.

### C.

It is asserted that trial counsel was ineffective for failure to adequately prepare for the sentencing phase of the trial. Counsel had not represented a defendant in a death penalty case in which there was a bifurcated trial. The only witness presented at the death penalty phase was appellant's mother. Counsel testified at the post-conviction hearing that the strategy was to try and select a jury which was not prone to giving the death penalty, and that they obviously didn't succeed in that respect.

One of appellant's defense counsel testified that in preparation for the sentencing hearing he had talked with the victim's wife who indicated that she did not want appellant to receive the death penalty and that he considered her his "ace in the hole" for the sentencing phase. However, it appears that sometime during the trial the prosecutor convinced Mrs. Streett that appellant might eventually regain his freedom and the only way to ensure he was not freed again was the death penalty. Consequently, she changed her mind during trial and would no longer ask that appellant's life be spared. The defense also planned to call appellant's mother to testify on his behalf and she did in fact testify. Counsel stated that he had numerous conversations with appellant's mother, mostly by telephone, and had discussed with her the possibility of her making a plea to the jury. Mrs. Douglas, appellant's mother, testified she did not know she would be asked to testify until shortly beforehand. The de-

fense also presented evidence that Don Cox, a co-perpetrator, had committed the same crimes but did not receive the death penalty.

■ Appellant urges that the testimony presented at the death penalty phase was so woefully inadequate and prejudicial that it requires reversal. He points to the fact that Daniels' father would have testified and made a plea for his son's life and that the pre-sentence report indicates appellant had a learning disability but that this was not brought out before the jury. Appellant urges that he was entitled to present anything about his life or character, such as this evidence, which might be considered mitigating, citing *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

It is urged that this failure to investigate and present mitigation evidence amounted to ineffective assistance of counsel. While in retrospect it is easy to say that defense counsel should have presented additional evidence in mitigation besides the testimony of appellant's mother, that testimony itself emphasizes that there may have been tactical reasons why additional witnesses were not called. As a result of statements made by appellant's mother, the prosecution was permitted to introduce a portion of appellant's juvenile record. Pitfalls exist in any strategy. Evidence of appellant's learning disabilities or childhood illnesses may have influenced the jury, but the source of this information is not identified nor is it known what opening this area of inquiry would reveal. It is possible that appellant's mother was the source of the information contained in the pre-sentence report.

Further, besides pointing out the information contained in the pre-sentence report and the availability and willingness of appellant's father to testify, no other potential mitigating evidence is identified, and the value of that which is identified questionable. Without a specific significant mitigator being identified, the decision to call only appellant's mother cannot be deemed deficient.

## D.

Ineffectiveness is urged due to appellate counsel's failure to assert as error the trial court's denial of a final instruction on voluntary manslaughter. As will be discussed later, the action by the trial court was not error and therefore neither was counsel's alleged omission.

## E. & F.

Trial counsel is alleged to have been ineffective for failing to object to an erroneous sentencing instruction and for failing to ask for funds to hire experts to demonstrate the discriminatory application of the death penalty. The underlying allegations in each are discussed *infra* and determined to not constitute error.

## G.

██ Trial counsel's performance is also criticized for failure to challenge the probable cause for arrest and for failing to challenge the "refiling" of the charges in criminal court. It has already been determined that there was nothing improper in filing the charges in criminal court. The probable cause argument rests on the fact the affidavit, when referring to co-perpetrator Cox and to Paul Rowley, calls them "reliable informants" which is arguably a classification under which neither of these individuals would fall. However, the statement of a co-perpetrator, implicating himself as well as appellant in a series of serious crimes carrying substantial penalties, is reliable enough to support the finding of probable cause for appellant's arrest. Since there was no error, counsel's performance could not be deficient.

## H.

Finally, on the ineffective assistance claim, appellant contends that inadequate preparation resulted in the defense not impeaching Kevin Edmonds on his knowledge concerning the location of the murder weapon. It was asserted on direct appeal that this was newly discovered information that defendant was not aware of at trial. This court found it was merely impeaching evidence and therefore did not rise to the level of newly discovered material evidence. No new evidence has been provided that counsel could have learned of this information prior to trial, and he will not be found lacking as a result.

## IV.

Appellant was charged with the felony murder of Allen Streett. He tendered a final instruction defining the offense of voluntary manslaughter and the instruction was rejected by the trial judge. While conceding that voluntary manslaughter is not a lesser included offense of felony murder, appellant urges that the State's decision to prove an intentional killing as an aggravating factor in support of the death penalty charge required the jury to make a specific intent finding and therefore opened the door to a lesser included voluntary manslaughter instruction.

██ Voluntary manslaughter is not a lesser included offense of felony murder because voluntary manslaughter requires a specific intent to kill while felony murder does not. The elimination of the need to prove specific intent to kill in felony murder arose from the risk to life inherent in the commission of the crimes providing the basis for the felony murder statute.

██ The State sought to also prove that appellant had the specific intent to kill as an aggravating factor in support of the death penalty count. The fact that this evidence was presented does not change the nature of the crime of felony murder. The State could have charged both the intentional and felony murders; but would be limited to imposition of sentence on only one. Even if they were both alleged, appellant, while entitled to a lesser included offense instruction where the facts merit on the intentional murder count, would not be entitled to such an instruction for the felony murder count. The additional proof that appellant did entertain the specific intent to kill does not change the nature of felony murder and consequently there was no error in refusing to instruct the jury on voluntary manslaughter as a lesser included offense of felony murder.

## V.

On direct appeal it was asserted "that the prosecutor made improper remarks during his final argument in the sentencing portion of the trial". *Daniels v. State* (1983), Ind., 453 N.E.2d 160. Now appellant asserts that he was prejudiced by "the prosecuting attorney's erroneous and inflammatory remarks in final argument at the sentencing ...".

▇▇▇ Appellant has generally identified as prejudicial different portions of the prosecutor's argument than those specified on direct appeal. However, inherent in this court's review at that time was the assessment of whether or not remarks made by the prosecutor at the sentencing phase of the trial constituted reversible error. Issues raised and decided on the merits on direct appeal are *res judicata* and are not available for review on appeal from denial of post-conviction relief. *Hollonquest v. State* (1982), Ind., 432 N.E.2d 37.

Appellant also cites to the recent United States Supreme Court case of *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). He urges that since evidence concerning the victim's personal life was referred to in the penalty phase the sentence of death must be reversed. *Booth* overturned a death sentence due to the fact that the jury had been presented with a victim impact statement detailing the emotional and psychological effect of the victim's death upon the family. The Court held that testimony or information of this nature at a capital sentencing hearing increased the likelihood of the death penalty being applied in an arbitrary manner.

▇▇▇ In the case before us, the prosecutor referred to some personal facts concerning the victim and his family during argument in the sentencing phase of the trial. What distinguishes the prosecutor's remarks in this case from the victim impact statement in *Booth* is the fact that the prosecutor's remarks referred to information adduced as evidence at trial. The jury heard the personal information during the trial through the testimony of the victim's wife and son concerning events leading up to the killing. References to these circumstances by the prosecutor during the sentencing portion of the trial were permissible. Trial testimony, relevant to guilt or innocence, may necessarily also reflect the nature of personal relationships between parties. Comment on evidence which also contains this information is not improper. The prosecutor tied the evidence together in such a way as to give the jury an impression of the victim's life. To simply start interjecting this information at the sentencing phase would be improper. However, since it was in reality evidence received at trial concerning the crime, the references were not improper.

## VI.

Appellant contends that the jury was misled during voir dire as to the discretion they had in making a death penalty recommendation and consequently the instructions were inadequate to correct the mistaken impression. No corrective instruction was tendered and appellant asserts this constituted ineffective assistance of counsel.

A substantially similar instruction was also challenged in *Brewer v. State* (1986), Ind., 496 N.E.2d 371, and found to adequately inform the jury of their options regarding imposition of the death penalty. As this court held there:

"Appellate counsel did not render ineffective assistance by failing to raise on appeal the sentencing instructions at trial, alleging the trial court erroneously failed to instruct the jury of its option not to recommend a death sentence. More specifically, Petitioner now claims the instructions were inadequate for failing to guide the jury in understanding they could refrain from recommending the death penalty even if the aggravating circumstances outweighed the mitigating circumstances. The guidelines for determining competence of counsel require deciding whether counsel's performance was so deficient that he or she was not functioning as counsel as guaranteed by the Constitution, and, if so, whether this failure to function as counsel was prejudicial, that is, counsel's er-

rors were so serious as to deprive the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Broadus v. State* (1986), Ind., 487 N.E.2d 1298. Appellate counsel was not ineffective for two salient reasons. First, there was no objection at trial regarding the failure to make this specific instruction, thereby waiving this issue. Second, the trial court did adequately instruct the jury they could decline to recommend the death penalty if they also found aggravating circumstances outweighed mitigating circumstances. The trial court gave the following instructions:

'The Jury *may* recommend the death penalty only if it finds:

(1) That the State has proved the existence beyond a reasonable doubt of the aggravating circumstance alleged in their charging indictment; and

(2) That any mitigating circumstances that exist are outweighed by the aggravating circumstances . . . .' (emphasis added).

This instruction clearly guided the jury in their understanding of aggravating and mitigating circumstances and conveyed their option to not recommend the death penalty even if the aggravating circumstances outweighed the mitigating ones. Accordingly, Petitioner's argument fails to establish appellate counsel was ineffective under the *Strickland* guidelines, thereby failing to demonstrate any error."

Assuming arguendo that the jury was mislead during voir dire, this instruction sufficiently conveyed the discretionary choice available to the jury.

### VII. & VIII.

 It is asserted that the death penalty statute is violative of the Indiana constitution and also that death by electrocution constitutes cruel and unusual punishment in violation of the Eighth Amendment. Appellant urges that this court reconsider these issues in light of changing times and morals. Both issues were recently presented to this court in *Fleenor v. State* (1987), Ind., 514 N.E.2d 80 and again decided adversely to appellant's contentions. The court does not choose to reassess its position at this time.

### IX.

 Appellant filed a motion with the post-conviction court requesting funds to hire an expert to determine whether a pattern of racial discrimination pervades Indiana homicide prosecutions. While acknowledging that the United States Supreme Court determined that statistical studies alone are not sufficient to establish that a death sentence was the result of racial discrimination in *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), appellant asserts that he would have presented "other" evidence besides a statistical study in support of his racial discrimination claim. That "other" evidence is not identified. He urges that the court provided expert would "focus counsel's efforts on obtaining other evidence needed in conjunction with the statistical evidence". The same type of statistical evidence presented in *McCleskey* would not be sufficient to support a discrimination claim. Without further insight into what type of "other" evidence appellant hoped to garner through the use of an expert, the court is not persuaded that denial of funds prejudiced appellant.

### X.

Appellant requested that none of the issues raised be considered waived. In support it is suggested that he personally never waived any issue; rather, his attorneys did so over his objection and he should not be penalized for his attorneys' mistakes.

The suggested approach would destroy any concept of finality in the appellate process. Decisions by counsel as to what issues will be raised, at trial and on appeal, are binding absent a finding of ineffective assistance.

### XI.

 It is alleged that the State failed to file probable cause affidavits in connection with the information filed and that this

failure deprived appellant of an opportunity to know the "nature and causes" of the action brought against him in violation of the Indiana Constitution, Art. 1, § 13. However, neither the statute in effect at that time I.C. 35–3.1–1–1 & 2, nor the present statute, I.C. 35–34–1–1 & 2, require a "probable cause affidavit" to accompany an information in a criminal case.

The information in this case was in the form of affidavits under oath and was signed and verified by the prosecutor. The information contained the county where the offenses occurred, the date, the name of the victims, the manner in which the offenses were committed and the property taken. The information satisfied the requirement of a concise written statement of the essential facts constituting the crimes and adequately conveyed the "nature and causes" of the offenses.

### XII.

■ Appellant claims that the charges against him were improperly joined for trial due to the failure of the prosecutor to file a motion for joinder. Contrary to his position, the only time the prosecutor needs to move for joinder is when the offenses have been charged in two or more indictments or informations. I.C. 35–34–1–10, formerly I.C. 35–3.1–1–10. The charges here were filed in one six count indictment, making joinder unnecessary.

The judgment is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.