William Michael DANIELS, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondant Below).

No. 49S00–8601–PC–33.

Supreme Court of Indiana.

Oct. 19, 1990.

Richard A. Waples, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

*Gathers* represented an extension of *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440, which held that it was constitutionally impermissible in capital sentencing proceedings to allow a sentencing jury to consider "victim impact statements" involving factors of which a defendant was unaware at the time of the offense. The statements at issue in *Booth* included descriptions of the victims' character and the emotional impact of the crime on the victims' family. Recognizing that such information may be wholly unrelated to a defendant's blameworthiness and that it invites arbitrary capital sentencing decisions depending upon the availability of witnesses to express grief and upon the sterling or questionable character of the victim, the Supreme Court held that such

information was "inconsistent with the reasoned decisionmaking we require in capital cases." 482 U.S. at 509, 107 S.Ct. at 2536, 96 L.Ed.2d at 452.

In *Gathers*, the victim was a street minister who carried a prayer card and voter registration certificate in his billfold, and the prosecutor's sentencing phase argument focused on the content of these cards. Citing *Booth*, the Supreme Court held that allowing the jury to rely on such information "could result in imposing the death sentence because of factors about which the defendant was unaware, and that were irrelevant to the decision to kill." *Gathers*, 490 U.S. at ——, 109 S.Ct. at 2210, 2211, 104 L.Ed.2d at 883.

In the present case, the appellant alleges that during the death penalty phase, the prosecutor displayed a life-size photograph of the victim, Allen Streett, a United States Army chaplain, in full military uniform, and then spoke to the jury:

> I wanted to talk in this part of the trial about the law, about the sanctity of life and about the grievous affront to humanity, the grievous affront to God, saying, "No, God. I'm going to take a life of the chaplain.... The people of the State of Indiana call the soul of Allen Streett to the witness stand. Defendant, defendant.... Chaplain Streett, how did it feel in Vietnam when you went in without a weapon and helped men who were facing death? Chaplain Streett, how did you do it? My wife would like to know how did you do it, that you never lost your temper but once in twenty-two years of marriage. Chaplain Streett, what was it like to have a relationship with your son who was just growing where you could go out and throw snowballs and kid around. What was it like to have a relationship with your wife where you could say "I'm going to go out and shovel snow," and she says, "Well, I'll send you roses." What was it like to have a relationship with a whole family which was so good and so pure and with God and with country? Have you ever seen a man who was more all there? Chaplain Streett, what does your soul

think about what's happening? Of course, we can't bring him in.

Record at 1139, 1140. In his concluding remarks, the prosecutor asked, "[H]ow does it cheapen the life of Allen Streett not to take the life of the defendant? ... Is the rest of his [Daniels'] life in prison the equivalent of Allen Streett's life?" Record at 1147.

If the standards announced in *Gathers*, decided in 1989, and *Booth*, decided in 1987, were applicable to the Indiana capital sentencing procedure utilized in defendant's trial in 1979 and the direct appeal which concluded in 1983, we would find a serious issue presented by the prosecutor's statements. Before reaching this question, however, we must first consider whether the *Booth/Gathers* rule is retroactively applicable to the present collateral proceeding. We further note that our discussion does not address the lack of any contemporaneous objection at the time of the prosecutor's remarks now claimed to be improper, because the State does not assert a claim of waiver.

In *Coleman v. State* (1990), Ind., 558 N.E.2d 1059, this Court cited with approval both *Parker v. Dugger* (1989), Fla., 550 So.2d 459, and *Jackson v. Dugger* (1989), Fla., 547 So.2d 1197, in which the Florida Supreme Court held that the *Booth/Gathers* rule should be given retroactive application in cases on direct appeal in which an adequate objection was lodged at trial. However, a direct appeal terminates and a conviction becomes final when the availability of appeal, including a petition for certiorari, is exhausted or expires. *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649. Daniels' conviction became final with the failure to seek Supreme Court review of our decision on direct appeal. The present cause, resulting from Daniels' separate appeal following the denial of his petition for postconviction relief, is a collateral review proceeding initiated after his case became final with the conclusion of his direct appeal.

Upon analysis of the issue of retroactivity, the Supreme Court recently held that a new constitutional rule of criminal proce-

dure is generally not applicable to those cases on collateral review, that is, those which have become final before the new rule was announced. *Teague v. Lane* (1989), 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334; *Penry v. Lynaugh* (1989), 492 U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256; *Butler v. McKellar* (1990), 494 U.S. ——, 110 S.Ct. 1212, 108 L.Ed.2d 347; *Saffle v. Parks* (1990), 494 U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415; and *Sawyer v. Smith* (1990), 497 U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193. Daniels directs our attention to *Collins v. Youngblood* (1990), 497 U.S. ——, 110 S.Ct. 2715, 111 L.Ed.2d 30, in which the Supreme Court noted that during oral argument the State of Texas expressly stated that it "had chosen not to rely" on the *Teague* rule, and held that the rule is "not 'jurisdictional' " in the sense that a reviewing court *"must* raise and decide the issue *sua sponte."* 110 S.Ct. at 2718, 111 L.Ed.2d at 38, (emphasis in original). In contrast, the present case does not contain any express waiver of the issue by the State, and, through its submission of *Sawyer* as additional authority, the State has addressed the issue of retroactivity.

The principle of new rule non-retroactivity was first extended to capital sentencings in *Penry.* Because *Penry* was decided after the present case was remanded to us,[1] we perceive that our responsibilities require, notwithstanding the remand "for further consideration" in light of *Gathers,* that our review include the possible applicability of the *Penry* holding. Retroactivity is necessarily a threshold question to be decided first before application of constitutional doctrine to the facts at issue. *Teague,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334.[2]

Daniels' direct appeal was concluded before the Supreme Court decided *Booth,* on which *Gathers* is based. The rule announced in these cases prohibiting consideration of victim impact information by a death penalty sentencing jury, qualifies as a "new rule" under *Teague* and *Penry* because it "breaks new ground or imposes a new obligation on the States or the Federal Government," or produces a result "not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349; *Penry,* 492 U.S. at ——, 109 S.Ct. at 2944, 106 L.Ed.2d at 275 (emphasis in original). If constitutional considerations do not require retroactive application of a "new rule" to cases on federal collateral review, retroactive application of such rules is likewise not constitutionally compelled in cases on state collateral review.

Our state rule regarding retroactivity in collateral proceedings, discussed extensively in *Rowley v. State* (1985), Ind., 483 N.E.2d 1078, was influenced by then-existing federal precedent. The reevaluation of this issue in *Teague* and *Penry* suggests that an analogous revision is appropriate for Indiana. Because the purposes for which this Court affords the remedy of post-conviction relief are substantially similar to those for which the federal writ of habeus corpus is made available, we elect to follow the approach of *Teague* and *Penry* in addressing the retroactivity of new law to cases on review pursuant to petitions for post-conviction relief under Indiana procedure.

Since the present case is before us on such collateral review, the new *Booth/Gathers* rule will not be given retroactive application unless it falls into one of

---

**1.** This cause was remanded on June 19, 1989. *Penry* was decided on June 26, 1989.

**2.** The present case is unlike the situation presented in *Yates v. Aiken* (1988), 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546, wherein the Supreme Court stated that its order remanding a case for further consideration in light of a specific intervening federal decision "contemplated that the state court would consider whether, as a matter of federal law, petitioner's conviction could stand" in the light of such specified decision. 484 U.S. at 215, 108 S.Ct. at 537, 98 L.Ed.2d at 552. However, unlike *Yates,* in which the Supreme Court observed that the state court had failed to consider whether the specified federal decision might apply retroactively, we address the issue of retroactivity as the threshold issue upon which rests the propriety of further consideration of application of the *Booth/Gathers* rule.

the recognized exceptions. *Teague* noted two exceptions to the non-retroactivity of new rules: 1) rules which place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," 489 U.S. at 307, 109 S.Ct. at 1073, 103 L.Ed.2d at 353; and 2) those which require the observance of "procedures that ... are 'implicit in the concept of ordered liberty,'" *Id.* (included citations omitted), and "without which the likelihood of an accurate conviction is seriously diminished." 489 U.S. at 313, 109 S.Ct. at 1077, 103 L.Ed.2d at 358. The first exception was expanded in *Penry* to permit retroactive application for new rules "prohibiting a certain category of punishment for a class of defendants because of their status or offense." 492 U.S. at ——, 109 S.Ct. at 2953, 106 L.Ed.2d at 285. The second exception was subsequently described as applicable only to "watershed rules" necessary to the fundamental fairness of a criminal proceeding and which "must not only improve accuracy, but also 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Sawyer*, 497 U.S. at ——, 110 S.Ct. at 2831, 111 L.Ed.2d at 211. (emphasis in original).[3]

The new rule established in *Booth* and expanded in *Gathers* clearly does not qualify under the first exception to non-retroactivity. Less obvious is the applicability of the second exception, "the precise contours" of which "may be difficult to discern." *Saffle*, 494 U.S. at ——, 110 S.Ct. at 1264, 108 L.Ed.2d at 429.[4] Aside from whether the *Booth/Gathers* rule has the

necessary primacy and centrality to fit the second exception, upon which we express no opinion, we conclude that, as to the remaining aspects of the exception, the absence of the rule does not seriously undermine the likelihood of an accurate death penalty determination under the distinctive Indiana statutory capital sentencing scheme.

The Indiana procedure differs significantly from both that in Maryland which applied in *Booth* and that in South Carolina which applied in *Gathers*. The death penalty sentences of Booth and Gathers each resulted directly from a jury sentence determination.[5] In contrast, it is the trial judge, not the jury, that determines the death sentence under Indiana law. Indiana Code § 35–50–2–9(e) provides in relevant part:

> (e) If the hearing is by jury, the jury shall recommend to the court whether the death penalty should be imposed. The jury may recommend the death penalty only if it finds:
>
> (1) That the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances exists; and
>
> (2) That any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances.

The court shall make the final determination of the sentence, after considering the jury's recommendation, and the sentence shall be based on the same standards that the jury was required to con-

---

**3.** These categorical exceptions may prove inadequate in future individual cases which demonstrate a compelling probability of innocence. It is possible that such exceptional cases may result in the adoption of a particularized exception akin to that applied to avoid procedural default in *Murray v. Carrier* (1986), 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397. *See* Hoffmann, *Retroactivity and the Great Writ: How Congress Should Respond to Teague v. Lane*, 1990 B.Y.U.L.Rev. 183, 213–217; Note, *Resolving Retroactivity After Teague v. Lane*, 65 Ind. L.J. 651, 670–672 (1990) (authored by Ellen E. Boshkoff). However, the instant case does not qualify for such consideration.

**4.** To illustrate the type of rule coming within the exception the Supreme Court has usually

cited *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses. *Saffle*, 494 U.S. at ——, 110 S.Ct. at 1264, 108 L.Ed.2d at 429.

**5.** Under Maryland law, Booth could have elected to have his sentence determined by either a judge or a jury. Md.Ann.Code, Art. 27, § 413(b) (1982). He chose a jury. In accordance with South Carolina law, Gathers was sentenced to death following a jury recommendation which was statutorily binding on the trial judge. S.C. Code Ann. § 16–3–20.

sider. *The court is not bound by the jury's recommendation.* [emphasis added].

One limitation has been judicially imposed upon the provision that the sentencing court is not bound by the jury's recommendation. In *Martinez–Chavez v. State* (1989), Ind., 534 N.E.2d 731, *reh'g. denied*, 539 N.E.2d 4, this Court required trial court deference to a jury recommendation *against* the death penalty except "when all the facts available to the court point so clearly to the imposition of the death penalty that the jury's recommendation is unreasonable." 539 N.E.2d at 5. We do not require any trial court adherence to a jury decision recommending imposition of the death penalty. When the jury recommends the death sentence, a judge is in no way bound by such recommendation.

In contrast to a jury recommendation, the Indiana trial judge must fully explain his reasoning in a capital sentencing order. Ind.Code § 35–38–1–3; *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, *cert. denied*, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699, *Judy v. State* (1981), Ind., 416 N.E.2d 95; *Hill v. State* (1986), Ind., 499 N.E.2d 1103, 1111. Our requirement for specificity is clear.

> The trial court's statement of reasons must include the following three elements: (1) it must identify all of the significant mitigating and aggravating circumstances, (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) it must articulate that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances to determine if the mitigating circumstances offset the aggravating circumstances. Requiring the

sentencing judge to state the reasons for imposing a particular sentence has a dual purpose. First, it insures the judge considered only proper matters when imposing sentence and thus safeguards against the imposition of sentences which are arbitrary or capricious. Second, it enables the appellate court to determine the reasonableness of the sentence imposed. [citations omitted].

*Hammons v. State* (1986), Ind., 493 N.E.2d 1250 at 1254, *reh'g. denied*, 496 N.E.2d 1284.

Thus, the sentencing judge must make a *de novo* review and fully articulate his or her reasons whenever the death sentence is ordered. A jury recommendation of death is opaque and reviewing courts cannot determine whether, and to what extent, the jury may have been affected when improper *Booth/Gathers* victim character and impact considerations are presented. But because Indiana procedure requires the actual sentencing decision-maker, the trial court judge, to fully memorialize the reasons leading to the sentencing decision, we may review to determine whether the judge was influenced by any improper victim information in arriving at the sentencing decision.[6] *See Coleman*, 558 N.E.2d 1059; *State v. Post*, (1987) 32 Ohio St.3d 380, 513 N.E.2d 754, *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023.

We are satisfied that the independent role of the sentencing judge and the enhanced opportunity for meaningful review under Indiana procedure preclude the possibility that a *Booth/Gathers* violation in the jury recommendation phase could detrimentally implicate the probable accuracy of the judge's final capital sentencing determination.[7] Thus the second exception to the

---

**6.** In the present case, this Court is satisfied that the sentencing judge has not been influenced by any impermissible *Booth/Gathers* considerations. Judge Gifford's written Findings Of Fact And Judgment Of The Court Imposing Death Penalty (Record p. 1865, 1866) reflect the trial court's careful consideration of both aggravating and mitigating circumstances relating to the death sentence and contain nothing suggesting that the judge's decision was affected by impermissible *Booth/Gathers* evidence. Furthermore, our review of the judge's comments during the court's final sentencing hearing fails to disclose any consideration of such impermissible evidence.

**7.** Our discussion of the Indiana capital sentencing procedure is directed only to the applicability of the second exception to the *Teague* rule. We do not imply that a trial judge's proper death sentence determination necessarily renders harmless any errors which occur in a jury recommendation proceeding.

*Teague* rule of non-retroactivity does not apply, and the *Booth/Gathers* "new rule" is not retroactive to Indiana jury death penalty hearings on collateral review. As in *Teague,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, the determination of new rule non-retroactivity precludes our consideration of the federal question presented, here the application of *Gathers* to the circumstances of the petitioner's 1979 sentencing proceeding.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

I respectfully dissent. The judgment of the court below denying post-conviction relief was affirmed in *Daniels v. State* (1988), Ind., 528 N.E.2d 775. In the appeal from that judgment, appellant was successful in having this Court reach the merits of his *Booth* claim. He was then successful in having the United States Supreme Court do the same, and we now know that the *Booth* claim was rejected for an erroneous reason. Under these circumstances, I am unable to conclude as does the majority, that the jurisdictional or threshold question of whether we should reach the merits of the claim is an issue now before us for decision. The remand order calls for consideration of the merits of the claim in light of the opinion in *South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), and I would do that.

The prosecutor, in his summation to the jury at the recommendation stage of this case, in order to persuade the jury to recommend to the judge that the death sentence be imposed, informed or reminded the jury that the victim was a clergyman, an army officer, a brave man, a defender of this country, and a good father and husband. Daniels had no knowledge of these matters when he chose to rob and kill, and therefore the matters were not relevant to the process of determining the weight of any aggravator or mitigator. They were irrelevant to determining Daniel's nature or the nature of his crime. They had no legal relevance to the determination of his blameworthiness. Yet there is no doubt in my mind that the jury, unrestricted by any admonition by the court, upon the call of the prosecutor, considered these irrelevant characteristics of the victim in arriving at its decision. It is, after all, an aspect of daily life that crime reports are made in the media and that characteristics of the victims are given in great detail and received with interest, and that they stimulate feelings of sympathy for victims and outrage against offenders.

Furthermore, the statements of the prosecutor were not only irrelevant, but like the statements made by the prosecutor in *Gathers,* had that stimulating quality which in this society can create an unacceptable risk of an arbitrary and capricious decision by the jury to recommend death and by the judge to give death. I am unable to say, beyond a reasonable doubt, that the prosecutor's improper remarks did not influence the jury and the judge to decide in favor of the death penalty in this case. Consequently, I would reverse the judgment denying post-conviction relief and order that post-conviction relief be granted to include new jury and judge sentencing hearings or the imposition of a term of years.