Martin PETERSON, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 64A05–9703–PC–102.

Court of Appeals of Indiana.

Jan. 13, 1998.

Transfer Granted Feb. 18, 1998.

Garrett V. Conover, Conover & Conover, Chesterton, for Appellant–Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

BARTEAU, Judge.

Martin Peterson appeals the denial of his petition for post-conviction relief, by which he sought reversal of his conviction of delivery of cocaine, a Class B felony. The conviction was entered upon Peterson's plea of guilty. Peterson presents the following issues for review, which we restate as:

1. Does the holding in *Bryant v. State* that double jeopardy principles bar criminal prosecution for a particular drug offense following an Indiana Controlled Substance Excise Tax (CSET) assessment for the same offense apply retroactively to cases on collateral review?;

2. Did the post-conviction court err in denying Peterson's petition when it concluded that:

1. The actual tax was in the amount of $229.60, plus interest, costs, and a 100% penalty for non-

a. the CSET rate as applied in Peterson's case was not a high rate and was not punitive; and

b. Peterson had waived his double jeopardy claim by entering a plea of guilty?

We reverse.

## *FACTS*

The relevant facts are that on June 3, 1993 and June 9, 1993, Peterson sold cocaine to an undercover agent of the Porter County Narcotics Unit. On August 25, 1993, the Indiana Department of State Revenue issued a CSET assessment against Peterson based upon the two sales in the total amount of $486.75, which was entered as a judgment on October 4, 1993.[1] Peterson was thereafter charged with Count I, delivery of cocaine as a Class B felony, and Count II, delivery of cocaine as a Class A felony, based upon the respective amounts of cocaine sold on the two dates. On September 15, 1994, Peterson pled guilty to Amended Count II, delivery of cocaine as a Class B felony, and Count I was dismissed. Peterson was sentenced to eighteen years in the Department of Corrections, with six years suspended. On March 6, 1995, Peterson paid the CSET assessment, satisfying the judgment against him.

On March 6, 1996, Peterson filed a petition for post-conviction relief seeking reversal of his conviction based upon our supreme court's holding in *Bryant v. State*, 660 N.E.2d 290 (Ind.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996). *Bryant* held that the CSET is a first jeopardy which attaches at the time of assessment and prohibits subsequent prosecution under the criminal law for the same offense. Following a hearing, the post-conviction court entered an order denying Peterson's petition, concluding that the tax rate in Peterson's case was not a high rate and therefore was not punitive, and further concluding that by pleading guilty, Peterson had waived his double jeopardy claim.

payment of the tax at the time of delivery of the cocaine, for a total assessment of $486.75.

### RETROACTIVE APPLICATION OF BRYANT V. STATE

■ A threshold question presented by Peterson's petition is whether the holding in *Bryant* applies retroactively to cases on collateral review. A direct appeal terminates, and a conviction and sentence become final, when all avenues of appeal are exhausted or the time for pursuing an appeal has expired. *Daniels v. State*, 561 N.E.2d 487, 488 (Ind. 1990). Peterson's case became final on March 29, 1995, which was the date on which his time for pursuing a direct appeal expired. *Bryant* was not decided until December 27, 1995.

■ In general, a new constitutional rule of criminal procedure is not applicable to those cases which have become final before the rule was announced. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989); *Daniels*, 561 N.E.2d at 488–89. However, a new rule may be given retroactive application to a case on collateral review if the rule falls within one of two exceptions: 1) rules which place " 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,' " *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075 (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part)); or 2) rules which require the observance of "those procedures that ... are 'implicit in the concept of ordered liberty,' " *Id.* (quoting *Mackey*, 401 U.S. at 693, 91 S.Ct. at 1180) and "without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313, 109 S.Ct. at 1077. The first exception was subsequently expanded to permit retroactive application of rules which prohibit "a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989). The principle of nonretroactivity and the exceptions thereto announced in these cases have been adopted by our supreme court. *Daniels*, 561 N.E.2d at 489.

This court recently addressed the issue of the retroactivity of the *Bryant* holding in *State v. Mohler*, 679 N.E.2d 170 (Ind.Ct. App.1997), *trans. granted*. In *Mohler*, a different panel of this court stated:

> Because the double jeopardy clause bars an unconstitutional prosecution, a rule that double jeopardy applies is equivalent to the rule considered in *Penry* which barred the imposition of an unconstitutional punishment.... In addition, the *Bryant* rule prohibits the prosecution of a specific class of defendants because of their status or offense, here, those persons who have previously been assessed a CSET for the same drug.

*Id.* at 173 (citations omitted). The court therefore determined that the *Bryant* holding "falls squarely under the first *Teague* exception and must be accorded full retroactive effect." *Id.* Our supreme court granted the State's petition to transfer in *Mohler*, and therefore, that decision does not constitute precedent. Ind. Appellate Rule 11(B). Nevertheless, despite the State's argument that the *Mohler* court interpreted the first *Teague* exception so broadly that "the exception will swallow the rule," Brief of Appellee at 10, we agree with the *Mohler* panel's analysis and conclusion regarding the retroactivity of the *Bryant* holding. For the reasons stated in *Mohler*, we conclude that the principle announced in *Bryant* applies retroactively.[2]

### DENIAL OF POST–CONVICTION PETITION

Having determined that the *Bryant* holding is to be applied retroactively, we turn now to the merits of Peterson's claim. Peterson asserts that the post-conviction court erred in denying his petition by determining that the CSET assessed in his case was not at a rate high enough to be considered punitive and by determining that his guilty plea operated as a waiver of his double jeopardy claim.

■ Under the rules of procedure for post-conviction remedies, the petitioner must

---

**2.** We note that the post-conviction court, in undertaking an independent analysis of the CSET rate as applied to Peterson to determine if the assessment was a punishment for double jeopar-dy purposes pursuant to the four-part test set forth in *Bryant*, implicitly did apply *Bryant* retroactively to this case.

establish his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). To succeed on an appeal of the denial of his petition, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Butler v. State,* 658 N.E.2d 72, 75 (Ind.1995); *Martin v. State,* 657 N.E.2d 430, 431–32 (Ind.Ct.App.1995), *trans. denied.* On appeal, we look only to the probative evidence and any reasonable inferences therefrom which support the judgment. *Butler,* 658 N.E.2d at 75.

■ Peterson first asserts that the post-conviction court erred in undertaking an independent analysis of the rate of the CSET assessed against him and determining that the rate was not punitive. In its Order Denying Petition for Post–Conviction Relief, the court stated:

A significant factor in [the] four part analysis [in *Bryant*] is the high rate of tax assessed. In *Bryant,* the rate was found to be over ninety times the market value of the drugs. In the present case, the market value of the drugs can be considered the price for which Defendant sold them, a total of $660.00 in the two sales. The CSET assessment was tax in an amount of $229.60. Comparing this tax rate to the rate in *Bryant,* ... [i]t is the conclusion of this Court that the tax rate in the present case is not a high rate and is not punitive.

R. 149.

The four part analysis used in *Bryant* for determining whether a tax is a punishment was based upon the Supreme Court's decision in *Montana Dep't of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). The Court in *Kurth Ranch* examined the Montana Dangerous Drug Tax's deterrent purpose, its high rate, the prerequisite of the commission of a crime before assessment, and the punitive nature of the tax, and determined that, when considered *in tandem,* these factors revealed that

the tax was a punishment and thus a jeopardy. 511 U.S. 767, 781–82, 114 S.Ct. 1937, 1947, 128 L.Ed.2d 767. Our supreme court examined the same four factors in *Bryant* and determined that assessment of the CSET and its 100 percent penalty constituted a punishment for double jeopardy purposes. 660 N.E.2d at 296–97.

The holding in *Bryant* is a definitive statement of law that the assessment of the CSET and its penalty is a punishment. Nothing in *Bryant* indicates that the trial court should undertake an independent analysis of the punitive nature of the CSET in each criminal case in which the double jeopardy ramifications of a CSET assessment are an issue. Indeed, in the companion cases to *Bryant,* decided the same day, the court merely referred to the *Bryant* decision in holding that the CSET assessment was a jeopardy without re-analyzing the four factors on a case-by-case basis. *See Clifft v. Indiana Dep't of State Revenue,* 660 N.E.2d 310, 313 (Ind. 1995); *Hall v. Indiana Dep't of State Revenue,* 660 N.E.2d 319, 321 (Ind.1995), *cert. denied,* 517 U.S. 1210, 116 S.Ct. 1828, 134 L.Ed.2d 933 (1996); *Bailey v. Indiana Dep't of State Revenue,* 660 N.E.2d 322, 324 (Ind. 1995); *Hayse v. Indiana Dep't of State Revenue,* 660 N.E.2d 325, 326 (Ind.1995). The post-conviction court erred in undertaking an independent analysis of the CSET assessment in Peterson's case.

We note that even if an independent analysis were appropriate, the post-conviction court's decision would still be in error. The court examined only one of the four factors set out in *Bryant,* the rate of the tax. The four factors are to be "considered *in tandem*" and the CSET evaluated "as a whole" when determining whether the tax is a punishment. *Bryant,* 660 N.E.2d at 296–97. In addition, the rate of the tax assessed against Peterson was the same rate assessed in *Bryant* and its companion cases.[3] Although under the specific facts of this case, the tax

---

**3.** The Controlled Substance Excise Tax provisions are found at Indiana Code sections 6–7–3–1 to –20. Section 6–7–3–6(b), as it existed at the time *Bryant* was decided, prescribed that schedule I, II, and III controlled substances (including marijuana and cocaine) were to be taxed at a rate of $40 per gram. The defendant in *Bryant* was taxed a total of $167,360 for delivering, possessing, or manufacturing 2092 grams of marijuana. The market value of marijuana had been identified in *Kurth Ranch* as $.44 per gram, which served as the basis of the *Bryant* court's determination that Indiana's CSET rate was over ninety times the market value of the drugs.

to market value ratio is much smaller than in *Bryant*, the rate is nonetheless the same. Further, the post-conviction court failed to take into account the total amount of the assessment against Peterson, including the 100 percent penalty for non-payment, in determining that the rate was not so high as to be considered punitive.

Peterson established by a preponderance of the evidence that he was assessed the CSET prior to criminal charges being filed against him. The State does not dispute the assessment of the tax or the sequence of events. Our supreme court's holding in *Bryant* therefore compels the determination that the assessment was punitive and constituted a jeopardy.

◼ Peterson next asserts that the post-conviction court erred in finding that he had waived his double jeopardy claim by pleading guilty. Generally, a guilty plea acts as a waiver of a double jeopardy claim. *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); *Jordan v. State*, 676 N.E.2d 352, 354 (Ind.Ct. App.1997). However, if a defendant has pled guilty to charges which are facially duplicative of a previous conviction, he is entitled to challenge the resulting conviction on double jeopardy grounds. *Menna v. New York*, 423 U.S. 61, 63, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975); *Griffin v. State*, 540 N.E.2d 1187, 1188 (Ind.1989).

◼ The post-conviction court found that "assessment of the CSET and a plea of guilty to dealing cocaine are in no way facially duplicative charges." R. 149. However, as Peterson points out, the CSET "is due when the person receives delivery of, takes possession of, or manufactures a controlled substance in violation of IC 35–48–4 . . . ." Ind. Code § 6–7–3–8. The CSET assessment is, therefore, predicated on the commission of an offense for which a defendant is also potentially subject to criminal prosecution. The statutory provisions for assessment of the CSET are dependent on the criminal statutes, from the triggering event to the definitions of "controlled substance," "delivery," and "manufacture." Ind.Code §§ 6–7–3–1, –2, –4. Given the double jeopardy ramifications of the CSET assessment against Peterson for delivery of cocaine, the criminal charge of delivery of cocaine was one which, judged on its face, the state could not constitutionally prosecute, and Peterson's guilty plea, therefore, did not waive his double jeopardy claim. This conclusion is further supported by the fact that at the time Peterson entered his plea of guilty, he was not aware that he *had* a double jeopardy claim. Any waiver of a fundamental constitutional right must be knowingly and intelligently made. *Tumulty v. State*, 666 N.E.2d 394, 395 (Ind. 1996).

### CONCLUSION

As the new rule announced in *Bryant* is entitled to retroactive application, the post-conviction court erred in independently analyzing the double jeopardy ramifications of the CSET assessed against Peterson. The trial court further erred in finding that Peterson had waived his double jeopardy claim by pleading guilty to the criminal charge. Accordingly, the trial court's denial of Peterson's petition for post-conviction relief is reversed, and this case is remanded with instructions to grant Peterson's petition and vacate his conviction.

SHARPNACK, C.J., concurs.

CHEZEM, J., concurs in result.