Ross BRYANT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 27S04–9409–CR–865.

Supreme Court of Indiana.

Dec. 27, 1995.

Concurring and Dissenting Opinion of
Justice DeBruler, Jan. 2, 1996.

Patrick N. Ryan, Ryan & Payne, Marion, for appellant.

Pamela Carter, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

We confront several questions of first impression involving Indiana's new drug tax. The State imposed both civil and criminal sanctions on appellant Ross Bryant for his failure to pay the Indiana Controlled Sub-

stance Excise Tax (CSET).[1] He appealed the criminal penalty, claiming he was twice punished for the same offense. We hold that the civil and criminal penalties were each jeopardies, and that both cannot be imposed without violating the Double Jeopardy Clause of the United States Constitution.

## I. Statement of Facts

In August 1992, Grant County Sheriff's deputies responded to an alarm at Bryant's home. Discovering an open door with fresh pry marks on it, they entered the dwelling and searched it. There was no one in the home, but police found over 250 marijuana plants in the basement, outhouse and garden. Officers then obtained a warrant and completed a more thorough search which uncovered marijuana seeds, dried marijuana and other drug paraphernalia. When police questioned Bryant upon his return, he confessed that the marijuana was his and that he was growing it for his own use. Police then arrested Bryant and transported him and the objects seized to the Grant County Jail.

The deputies next contacted the Indiana Department of Revenue to report their findings. The Department dispatched a special agent to the jail to determine the amount of Controlled Substance Excise Tax owed by Bryant.[2] The agent weighed the marijuana and assessed a tax of $83,680.[3] The agent then met with Bryant and demanded payment. Because Bryant did not immediately pay the CSET, the agent served him with a "Record of Jeopardy Findings and Jeopardy Assessment Notice and Demand" which required payment of the CSET plus a 100 percent penalty for nonpayment of the tax.[4] Bryant's total obligation to the State was thus $167,360. The very next day, the Department levied on Bryant's "checking and/or savings accounts, contents of safe deposit boxes, money market accounts, certificates of deposit, ... [and] any other evidence of indebtedness" as payment on this obligation. (R. 456.) Counsel informed us at oral argument that the Department also seized Bryant's home.

The State next charged Bryant with failure to pay the CSET, a class D felony;[5] growing and cultivating more than 30 grams of marijuana, a class D felony;[6] maintaining a common nuisance, a class D felony;[7] and, possession of less than 30 grams of marijuana, a class A misdemeanor.[8]

In April 1993, Bryant was convicted on all four counts. The court sentenced him to two and a half years in prison on each of the four felony counts and one year for misdemeanor possession. His sentences were to run concurrently, with one year suspended to probation.

1. Ind.Code Ann. §§ 6–7–3–1 to 6–7–3–17 (West Supp.1994).

2. Ind.Code Ann. §§ 6–7–3–8, 11 (West Supp. 1994). The CSET, which went into effect on July 1, 1992, imposes a tax on the delivery, possession or manufacture of a controlled substance in Indiana in violation of Ind.Code ch. 35–48–4 or 21 U.S.C. §§ 841–852. Ind.Code Ann. § 6–7–3–5 (West Supp.1994).

3. The marijuana seized from Bryant weighed 2092 grams. The CSET prescribes that schedule I, II, and III controlled substances (including marijuana) are taxed at a rate of $40 per gram and a proportionate amount for each fraction of a gram. Ind.Code Ann. § 6–7–3–6 (West Supp. 1994). Schedule I, II and III substances are identified at Ind.Code Ann. §§ 35–48–2–4, –6, and –8 (West Supp.1994).

4. Ind.Code Ann. § 6–7–3–11(a) (West Supp.1994) provides: "A person may not deliver, possess or manufacture a controlled substance subject to the tax under this chapter unless the tax has been paid. A person who fails or refuses to pay the tax imposed by this chapter is subject to a penalty of one hundred percent (100%) of the tax in addition to the tax."

5. Ind.Code Ann. § 6–7–3–11(b) (West Supp. 1994) declares: "A person who knowingly or intentionally delivers, possesses, or manufactures a controlled substance without having paid the tax due commits a Class D felony. This subsection does not apply to a person in violation of IC 35–48–4–11, if the violation is a misdemeanor." (The second sentence of this subsection exempts first-time offenders involving no more than thirty grams of marijuana, or two grams of hash oil or hashish.)

6. Ind.Code Ann. § 35–48–4–11(2) (West 1986).

7. Ind.Code Ann. § 35–48–4–13 (West Supp. 1994).

8. Ind.Code Ann. § 35–48–4–11(1) (West 1986).

Bryant subsequently appealed to the Indiana Court of Appeals. After briefing was completed, I transferred the case to this Court pursuant to the authority granted me by Ind.Appellate Rule 4(D).

Bryant raises the following issues on appeal:

1. Whether the State violated the Double Jeopardy Clause by assessing both the CSET's civil and criminal sanctions against Bryant; [9]

2. Whether the trial court erroneously convicted Bryant for failure to pay the CSET based on evidence that he grew and cultivated marijuana;

3. Whether the trial court erred when it admitted evidence obtained in the search of Bryant's home;

4. Whether the trial court erred by admitting evidence of Bryant's prior convictions; and,

5. Whether there was sufficient evidence to convict Bryant of possessing marijuana and maintaining a common nuisance.

We hold the Department's assessment of the CSET against Bryant was a jeopardy. His criminal prosecution for failure to pay the CSET constituted a second jeopardy in violation of his double jeopardy rights under the United States Constitution, as did his criminal prosecutions for growing and possessing marijuana. Accordingly, we vacate his conviction on those counts.[10] We affirm his conviction on the remaining count.

## II. The CSET and Double Jeopardy

Bryant claims that because the State assessed the CSET and its 100 percent penalty for nonpayment against him and later convicted him of a felony for nonpayment, it

violated his double jeopardy rights under the United States and Indiana Constitutions.[11] U.S. CONST. AMEND. V; IND. CONST. art. I, § 14.[12]

■ The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V. This clause is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It protects a person from suffering (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

■ Jeopardy is, in its constitutional sense, a technical term which has traditionally applied only to criminal prosecutions. *Evans v. Brown,* 109 U.S. 180, 3 S.Ct. 83, 27 L.Ed. 898 (1883). Departing from this historical rule, however, the U.S. Supreme Court has held in recent years that particular forfeitures, civil fines and financial exactions can be "jeopardies." *Montana Dep't of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). *Cf. Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). · In determining whether a jeopardy has occurred, the Court has said that the sanction's label of "criminal" or "civil" is not controlling. *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901; *see also United States v. Haywood,* 864 F.Supp. 502, 506 (W.D.N.C.1994) (description of sanction as "civil" does not foreclose possibility it is a jeopardy). Rather, the test is whether the

9. Bryant also alleges that the CSET violates the federal and state prohibitions against excessive fines and the state prohibition against imprisonment for a debt. U.S. Const. amend 8; Ind. Const. art. I, §§ 16, 22. Because we reverse Bryant's CSET conviction, we need not address these issues.

10. Thus, we need not address the second claim listed above.

11. Bryant characterizes the tax and civil penalty for nonpayment as one punishment or jeopardy.

Accordingly, we consider these provisions in tandem.

12. Article I, § 14 provides: "No person shall be put in jeopardy twice for the same offense." Bryant has presented no cogent argument with respect to his Indiana claim. He thus presents no viable state constitutional basis for his appeal. *St. John v. State* (1988), Ind., 523 N.E.2d 1353, 1355.

civil sanction constitutes a "punishment." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1946. When the sanction serves the goals of punishment rather than the remedial purposes of compensating the government for its loss, it is a "punishment" and thus a "jeopardy" within the Double Jeopardy Clause. *Id.* The sanction's essence as a punishment can be identified "only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Halper,* 490 U.S. at 447, 109 S.Ct. at 1901.

### A. Is the CSET's Civil Sanction a Punishment?

■ The Supreme Court recently delineated the analysis for determining whether a tax is a punishment in *Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, a case bearing strong resemblance to the one before us. In *Kurth,* the Montana Department of Revenue sought to impose both criminal and tax penalties for the same possession of marijuana. In determining whether the tax was a "punishment" and thus a jeopardy under double jeopardy analysis, the Court examined four factors: the tax's deterrent purpose (as opposed to revenue purpose), its high rate, its prerequisite of the commission of a crime before assessment, and the nature of the tax. Ultimately, the Court found that when considered *in tandem* these factors revealed that the Montana tax was a punishment and thus a second jeopardy imposed on the taxpayer in violation of the Double Jeopardy Clause.

To apply the *Kurth* analysis, we examine first the purpose and rate of the CSET.[13] It is apparent that the CSET is aimed at least partly towards deterrence. One who pays the CSET receives a receipt that admonishes him that delivery, sale, possession or manu-

facture of a controlled substance is a crime. Ind.Code Ann. § 6–7–3–10(a) (West Supp. 1994). The taxpayer is required to show this receipt to officials to prove he has paid the tax, but the receipt is valid for only forty-eight hours. Ind.Code Ann. § 6–7–3–10(b) (West Supp.1994). A taxpayer who possesses the same drug for over forty-eight hours must therefore repay the tax every forty-eight hours to continue to possess a valid receipt and thereby avoid the CSET's additional sanctions. Both the receipt's admonition and the limited period for which it is valid suggest a deterrent purpose.

Second, just as the *Kurth* Court found the high rate of the Montana tax demonstrated its punitive character, we find the CSET's rate similarly revealing. The Montana tax was imposed at the rate of $100 per ounce, roughly eight times the market value of the marijuana taxed. *Kurth Ranch,* —— U.S. at ——, n. 12, 114 S.Ct. at 1943, n. 12. Indiana's CSET imposes a tax of $40.00 per gram, or $1,133.96 per ounce. This is a rate of over ninety times the market value and more than eleven times the rate imposed in *Kurth.*[14] It indicates a punitive character.

The third factor the *Kurth* Court found suggestive of the tax's punitive nature was the fact that it was conditioned on the commission of a crime and was exacted only after the possessor was arrested. The Court found these conditions " 'significant of [the tax's] penal and prohibitory intent rather than the gathering of revenue.' " *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1947 (quoting *United States v. Constantine,* 296 U.S. 287, 295, 56 S.Ct. 223, 227, 80 L.Ed. 233 (1935)). The CSET is similarly conditioned on the commission of a crime. It is imposed only on individuals who deliver, possess or manufacture controlled substances "in viola-

---

13. Ind.Code Ann. § 6–7–3–13 (West Supp.1994) characterizes the initial assessment of the tax as a "jeopardy assessment." The Department claims the "jeopardy" label does not connote a "jeopardy" for double jeopardy purposes. Based on our conclusion that the CSET is a jeopardy, it is unnecessary to evaluate this delineation. Moreover, we will not address here whether the assessment of the tax itself was a jeopardy independent of the 100 percent penalty and criminal charge, as that issue was not raised on appeal. Rather, for today's purposes we consider the tax

and civil penalty assessed by § 6–7–3–11(a) as one sanction.

14. The *Kurth* Court identified the market value of marijuana as $200 per pound, which equals $12.50 per ounce or $.44 per gram. *Kurth Ranch,* —— U.S. at ——, n. 12, 114 S.Ct. at 1943, n. 12. We use this same market value to compare the rate of the CSET with the street value of Bryant's marijuana. There is no contrary evidence in the record.

tion of IC 35–48–4 or 21 U.S.C. 841 through 21 U.S.C. 852." Ind.Code Ann. § 6–7–3–5 (West Supp.1994).

Moreover, while the plain language of the statute does not limit the imposition of the CSET to a time after arrest, this is its effect. The law does say that a taxpayer owes the tax regardless of whether she is arrested. The Department assesses the tax, however, only when police contact it to report an individual who is in custody for the delivery, possession or manufacture of a controlled substance. The resemblance between the two schemes seems more compelling than the difference.

■ Finally, the *Kurth* Court found that because the Montana tax was characterized as a "property" tax but was assessed only after the controlled substance was confiscated, the tax possessed none of the indicia of "a species of a property tax." *Kurth Ranch,* — U.S. at —, 114 S.Ct. at 1948. Likewise, the CSET is so far removed from a normal excise tax that it must be classified as a punishment. An excise tax is one which is imposed upon the performance of an act or the enjoyment of a privilege. Black's Law Dictionary 506 (5th ed. 1979). As in *Kurth,* however, the Department routinely imposes the CSET only after a taxpayer's drugs have been confiscated. The taxpayer neither enjoys a privilege nor performs an act at the time of taxation. The CSET cannot therefore be classified as a normal excise tax.[15]

The CSET differs from a traditional excise tax in another respect. The rate of the tax so significantly outreaches that of other excise taxes in this state that its classification as a normal excise tax is impossible. No other Indiana excise tax imposes such a severe civil penalty for nonpayment. *See, e.g.,* Ind.Code Ann. § 6–7–1–24(a)(2) (West Supp. 1994) (failure to pay cigarette tax can result in fifty percent penalty).

The CSET is not identical to the *Kurth* tax in every respect, but the factors outlined in *Kurth* do not create a bright line. After evaluating the CSET as a whole, like the Court in *Kurth,* we conclude that "this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Kurth Ranch,* — U.S. at —, 114 S.Ct. at 1948. Accordingly, the assessment of the CSET and its 100 percent penalty against Bryant was a punishment and thus a jeopardy.

### B. Were the CSET's Civil and Criminal Sanctions Multiple Punishments for the Same Offense?

■ Having concluded the CSET's civil sanction was a jeopardy, we must now determine whether the imposition of the CSET's civil and criminal penalties constituted multiple punishments for the same offense. Because the CSET imposes its civil and criminal penalties in two separate proceedings, we are not required to address the permissibility of "multiple punishments" imposed in the same proceeding. *See, e.g., Kurth Ranch,* — U.S. at —, n. 21, 114 S.Ct. at 1947, n. 21; *cf. North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). Rather, we must address whether the CSET's criminal and civil punishments violate the double jeopardy prohibition against a second prosecution for the same offense after conviction or acquittal because it imposes separate sanctions in successive proceedings.[16]

■ In determining whether the two offenses are the same, we apply the test first announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and recently revived in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125

---

**15.** Unless the Department independently finds and assesses drug possessors without police intervention, this will always be the case. Evidence at trial suggested that the Department does not conduct such independent investigations and it did not do so in Bryant's case.

**16.** Even though the tax proceeding against Bryant began at the same time as the criminal prosecution, this does not make it a single proceeding raising the issue of "multiple punishments" for the "same offense." As in *Kurth,* the fact that the two were pending contemporaneously is not determinative. *Kurth Ranch,* — U.S. at —, n. 21, 114 S.Ct. at 1947, n. 21.

L.Ed.2d 556 (1993).[17] Where the same act or transaction constitutes a violation of two distinct statutory provisions, "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not. If each statute requires proof of an additional fact which the other does not," the offenses are not the "same offense" for double jeopardy purposes. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. For example, a state violates double jeopardy protection when it punishes a defendant for a greater offense and a "lesser included offense." That is, if the lesser included offense requires no proof beyond that required for the greater offense, the two are the "same offense" for purposes of the Double Jeopardy Clause.[18] There are, however, similar offenses which do not violate the "same elements" test. Crimes which possess overlapping proof are not conclusively double jeopardies. The conduct proved may be " 'one and the same' " so long as each offense possesses " 'an element not embraced in the other.' " *Dixon*, 509 U.S. at 704, 113 S.Ct. at 2860 (quoting *Gavieres v. United States*, 220 U.S. 338, 345, 31 S.Ct. 421, 423, 55 L.Ed. 489 (1911)).

Employing the "same elements" analysis, we find that the CSET's civil and criminal sanctions are punishments for the same offense. Both punishments require that a person deliver, possess or manufacture a controlled substance without having paid the CSET to be subject to prosecution. The only distinction between the punishments is found in the criminal sanction imposed for nonpayment in subsection (b) of § 6–7–3–11. This provision requires a mens rea of "knowingly or intentionally" for criminal conviction. The CSET's civil sanction requires no mens rea. However, its elements are identical to the criminal sanction's elements in all other respects. Because the civil penalty invoked by subsection (a) of the statute requires no elements other than those included in the criminal penalty found in subsection (b), these subsections are two punishments for the same offense.

### C. Which Jeopardy is Barred as the Second Jeopardy?

The determination of when jeopardy attaches is the lynchpin for concluding which jeopardy is barred as a second jeopardy. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978). Consequently, we turn to the question of which CSET sanction was Bryant's first jeopardy and which was the second jeopardy prohibited by the Fifth Amendment. To resolve this question we must settle when jeopardy attaches in a civil proceeding. Of course, the U.S. Supreme Court has not considered this question since its decision just last year in *Kurth*. Thus, we write on largely a clean slate.[19] The Court has, however, enumerated factors and policies underlying attachment

---

**17.** Five justices of the U.S. Supreme Court expanded the "same offense" analysis of *Blockburger* in the 1990 decision of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady* established a second prong to the traditional *Blockburger* test under which courts were required to analyze whether the "conduct" underlying the offenses was the same, in which case a subsequent prosecution would be barred notwithstanding differences in the required elements. This decision was overruled by *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), when the Court reestablished the primacy of the traditional *Blockburger* analysis.

**18.** *See, e.g., Brown v. Ohio*, 432 U.S. 161, 167–68, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977), where the U.S. Supreme Court applied this "lesser included offense" analysis to the crimes of joyriding and auto theft. The Court concluded that a prosecutor who has established auto theft necessarily has established joyriding as well. Ac-

cordingly, they were the "same offense." The Court expanded this analysis in *Harris v. Oklahoma*, when it evaluated whether one offense was a species of a lesser-included offense of the other. *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (finding robbery a lesser-included offense when felony murder conviction required proof of robbery).

**19.** In fact, only a few courts have addressed when jeopardy attaches in a civil proceeding. *See, e.g., United States v. Sanchez–Escareno*, 950 F.2d 193, 201 (5th Cir.1991) (until government attempts to collect or does collect civil fines, mere imposition of fines does not constitute punishment for double jeopardy purposes); *United States v. Park*, 947 F.2d 130 (5th Cir.1991) (jeopardy attaches when forfeiture proceeding begins); *United States v. Torres*, 28 F.3d 1463 (7th Cir.1994) (holding jeopardy did not attach in drug forfeiture proceeding where defendant asserted no claim to seized drug money).

which will help identify the point when jeopardy attached in this action.

 Although the Fifth Amendment declares that no person shall be twice put in jeopardy of life or limb, this constitutional prohibition is not against being twice punished, but is against twice being *put* in jeopardy. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The Double Jeopardy Clause thus refers to the risk that a person will, for a second time, be convicted of the same offense. *Id.* The notion that "jeopardy" is "risk" is the very core of double jeopardy jurisprudence. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Where a risk of a determination of guilt exists, for example, jeopardy attaches. *See, e.g., Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *see also Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) (jeopardy is the risk of trial and conviction, not punishment). These cases are consonant with the well-known rule that jeopardy attaches when a jury has been impaneled and sworn. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).

 Using the point at which there is a risk of conviction as the moment when jeopardy attaches for Fifth Amendment purposes assures that a person is not forced to endure the personal strain, public embarrassment, and expense of a trial more than once for the same offense. The Double Jeopardy Clause achieves this result by effectively dictating that the government cannot make multiple attempts to convict an individual for an alleged offense, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Benton v. Maryland*, 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23

L.Ed.2d 707 (1969); *see also Breed*, 421 U.S. at 530, 95 S.Ct. at 1786. Accordingly, it is essential to determine the time of attachment to protect promptly the accused's rights to finality of judgment, to minimization of exposure to the ordeals of trial and to continue with a chosen jury. *Crist*, 437 U.S. at 38, 98 S.Ct. at 2162; *see also United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (constitutional policy of finality inherent in Fifth Amendment). A court's conclusion that jeopardy attached at a specific point reflects its judgment that the constitutional policies underpinning the Double Jeopardy Clause are implicated at that stage of the proceeding. *Jorn*, 400 U.S. at 480, 91 S.Ct. at 554–55.

We conclude that jeopardy first attached when the Department served Bryant with its Record of Jeopardy Findings and Jeopardy Assessment Notice and Demand. At that moment, Bryant faced more than a risk of being found guilty; he had actually been found guilty. The assessment itself was a judgment against Bryant for the CSET and its 100 percent nonpayment penalty. This judgment enabled the Department to levy on Bryant's property immediately, and the Department exercised that authority the day after it issued Bryant's jeopardy assessment. To hold jeopardy attached at any point later than assessment would give the Department latitude to subject the taxpayer to the ordeal of assessment and levy multiple times for the same offense.[20] That would be contrary to the constitutional policies underlying the Double Jeopardy Clause.

The dissent suggests that finding jeopardy attached at assessment forecloses prosecution. This is correct so long as the State prosecutes the defendant after the Department assesses the CSET. We know from oral argument on this cause, however, that the Department does not conduct independent investigations, searching for drug of-

---

**20.** The only other options for attachment are the time of actual collection or when a taxpayer appeals the assessment. Attachment cannot be said to occur on appeal or at collection because the taxpayer is inherently at risk of a determination of guilt and of losing his property from the moment of assessment. Furthermore, if we were to find it attached when a taxpayer appeals the assessment, the defendant would possess the luxury of choosing which jeopardy was his first; he would initiate his appeal only where his tax liability was minor compared to his potential criminal penalty and would demand a speedy trial when his tax liability was significant compared to his potential criminal liability.

fenders. Rather, it learns of an offense only when contacted by the police or prosecutor. This situation creates the opportunity for discussion between the Department and law enforcement authorities as to who will proceed first. Moreover, it seems plain enough for Fifth Amendment purposes that, from the citizen's point of view, it is irrelevant whether penalties imposed by one branch of the government foreclose penalties by another branch.

In any event, if there is any problem of coordination between the Department and law enforcement authorities (and what we were told at oral argument suggests there is none), the General Assembly may simply amend the statute to require the Department and prosecutor to consult with one another about who should go first.

■ The CSET assessment was Bryant's first jeopardy. The moment the jury was sworn in his criminal trial for nonpayment of the CSET a second jeopardy attached. *Crist*, 437 U.S. at 38, 98 S.Ct. at 2162. Accordingly, the Double Jeopardy Clause barred Bryant's criminal prosecution for nonpayment. We vacate the conviction for failure to pay the CSET.

■ Moreover, having concluded the CSET is a jeopardy, Bryant's convictions for growing more than 30 grams of marijuana and possessing less than 30 grams of marijuana were also subsequent jeopardies barred by the Double Jeopardy Clause. As we explain today in *Clifft v. Indiana Dep't of State Revenue* (1995) Ind., 660 N.E.2d 310, subsequent prosecutions under the criminal law for the same drug offenses twice places a defendant in jeopardy. We therefore vacate Bryant's criminal convictions.

### III. The Warrantless Search of Bryant's Home

■ This case presents another novel issue unrelated to the CSET and double jeopardy. Bryant contends the trial court committed reversible error when it admitted evidence obtained in the police search of his home, saying it was illegally obtained in violation of the Fourth Amendment to the U.S. Constitution.[21] The State contends that exigent circumstances justified the warrantless search because officers reasonably believed a person inside Bryant's home may have been in need of aid and because the deputies possessed probable cause to believe a burglary was in progress.

■ The Fourth Amendment provides each person the right to be secure in his or her person, houses, papers and effects against unreasonable searches and seizures. U.S. CONST. AMEND. 4.; IND. CONST. art. I, § 11. Generally, a search or seizure may only be conducted pursuant to a lawful warrant. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Taylor v. State* (1992), Ind., 587 N.E.2d 1293. The cardinal principle in search and seizure jurisprudence therefore is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable . . .—subject only to a few specifically established and well-delineated exceptions." *Fair v. State* (1993), Ind., 627 N.E.2d 427, 430 (quoting *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978)). Exigent circumstances compelling quick action before a warrant can be obtained are recognized as such an exception. *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (building on fire). The State bears the burden of proving the existence of exigent circumstances sufficient to justify the lack of formalities. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ The State initially argues that its warrantless search was justified because a person inside Bryant's home may have been in need of aid. The U.S. Supreme Court and this Court have recognized a limited exception to the warrant requirement where an

---

**21.** Police did not possess a warrant for the initial search of the home, but they obtained one before the second search, during which they seized the marijuana and drug effects. Bryant also contends that admission of this evidence violated Article I, § 11 of the Indiana Constitution, but does not present any cogent argument concerning this claim. Accordingly, the claim is waived. *St. John*, 523 N.E.2d at 1355.

officer reasonably believes such circumstances exist. *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Tata v. State* (1986), Ind., 486 N.E.2d 1025. In cases employing this exception, however, police possessed objective evidence that a violent crime had or was about to occur. *Hayden,* 387 U.S. 294, 87 S.Ct. 1642; *Tata,* 486 N.E.2d at 1028. There was no such evidence in this case. Officers did not find any evidence outside the home and did not hear any sound from the home which could reasonably lead them to conclude a person inside was in need of aid.[22] The warrantless search of Bryant's home cannot be justified on these grounds.

▇▇▇ Until today, this Court had not considered the State's second argument: that police may enter a home when they reasonably believe a burglary may be in progress or has recently been committed. Numerous state and federal courts, however, agree that these are exigent circumstances excusing warrantless entry. *See, e.g., Reardon v. Wroan,* 811 F.2d 1025 (7th Cir.1987); *State ex rel. Zander v. District Court,* 180 Mont. 548, 591 P.2d 656 (1979) (warrantless entry necessary to protect property and determine whether suspect was hiding inside where police believed burglary was in progress); *United States v. Salava,* 978 F.2d 320 (7th Cir.1992).

▇▇▇ Our own Court of Appeals has also recognized this exception. *B.P.O.E. # 576, Elks Club v. State* (1980), Ind.App., 413 N.E.2d 660. These courts and other authorities generally agree that such an entry and search does not offend the Fourth Amendment because the emergency circumstances surrounding a potential burglary justify the action. *See* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 6.6(b), at 706–707 (2d ed. 1987). We agree that police may enter private property to protect that property when they reasonably believe the premises have recently been or are being burglarized.

▇▇▇ Of course, any search conducted because police reasonably believe a burglary is in progress or has just occurred is limited to areas in which an intruder could reasonably conceal himself. Officers may not use the situation as an excuse to conduct a general search for evidence. *State v. Crabtree,* 655 S.W.2d 173 (Tenn.Crim.App.1983). A search beyond the exigencies presented would violate the Fourth Amendment.

In Bryant's case, Grant County Sheriff's deputies entered the home after receiving an emergency call from a neighbor who reported that a home alarm was sounding. When deputies arrived at the scene, they observed fresh pry marks on an open door. They entered the house and conducted a protective sweep of the residence.

The totality of these circumstances reveals that exigent circumstances justified the search. The sounding alarm, fresh pry marks and open door led police to a reasonable belief that a burglary was in progress or had recently occurred. The officers searched no more area than was reasonably necessary, but still discovered hundreds of marijuana plants in plain view. Admission of evidence found during the search was therefore not error.

### IV. Admissibility of Bryant's Prior Convictions

▇▇▇ During Bryant's trial, the State cross-examined him regarding his convictions for robbery and armed burglary thirty-five and forty years prior to his arrest. Bryant contends these convictions were too remote to be admissible.

▇▇▇ The trial court has considerable latitude in admitting or rejecting evidence. Error in admitting evidence is not a basis for setting aside a conviction unless the erroneous admission was inconsistent with substantial justice or affects the substantial rights of the parties. Ind.Trial Rule 61; *Fleener v. State* (1995), Ind., 656 N.E.2d 1140.

▇▇▇ Under our common law evidentiary rules,[23] a prior criminal conviction may

---

**22.** When police arrived at Bryant's home, no one told them that a violent crime against a person had occurred or was imminent. *Cf. Tata,* 486 N.E.2d at 1028.

**23.** We adopted the Indiana Rules of Evidence on

be used for impeachment if it involved dishonesty or false statement or constituted what is commonly referred to as an "infamous crime" which would have rendered the witness incompetent to testify. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, 217. Bryant's convictions for robbery and burglary fall squarely within the *Ashton* "infamous crimes" which the trial court could rightfully admit for impeachment purposes. A question regarding the lapse of time between the conviction and the testimony to be impeached does not affect the admissibility of the conviction. *Robinson v. State* (1983), 446 N.E.2d 1287. Rather, the lapse of time from the defendant's prior conviction is a matter for the jury to weigh in assessing the weight of the evidence and the credibility of the witness. *Id.* The trial court properly admitted evidence of Bryant's prior convictions.

### V. Sufficiency of the Evidence

 We do not reweigh the evidence or judge the credibility of the witnesses when considering a sufficiency question on appeal. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. These are matters exclusively within the province of the jury. Rather, we consider the evidence most favorable to the verdict, along with any reasonable inferences therefrom, to determine whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Moore v. State* (1987), Ind., 515 N.E.2d 1099. We affirm if each element of the crime is supported by substantial evidence. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

 Bryant challenges his misdemeanor conviction for possession of marijuana, claiming he was not in exclusive possession of the property in which officers found two bags of

dried marijuana and over 300 marijuana plants. We need not address this issue based on our conclusion that the conviction was a second jeopardy barred by the Double Jeopardy Clause. We note, nonetheless, that Bryant owned the home in which the marijuana was found and confessed to police that the marijuana was his. Various other drug paraphernalia found in Bryant's home compounded the evidence of his guilt. We conclude there was no evidence which could reasonably lead the court to believe someone other than Bryant possessed the drugs.[24] There was sufficient evidence to support Bryant's conviction.

 Bryant also challenges his conviction for maintaining a common nuisance, contending the State failed to prove he committed a continuous or recurring violation sufficient to constitute the "maintenance" of a common nuisance. The Code required the State to prove Bryant knowingly or intentionally maintained a building that was used for unlawfully keeping, offering for sale, selling or delivering a controlled substance described in § 35–48–4–8.5 to convict him of maintaining a common nuisance. Ind.Code Ann. § 35–48–4–13(b)(2) (West Supp.1994). We have not previously addressed whether § 35–48–4–13 requires the State to prove continuous or recurring possession. We did conclude, however, that continuous or recurring possession was an element under a former statute on the grounds that the "maintains" or "maintaining" language of the act implicitly required proof of a continuing or recurring violation. *Keeth v. State* (1923), 193 Ind. 549, 550, 139 N.E. 589, 590.[25] Because § 35–48–4–13(b) contains this same language in its body and title, we hold the State must have proven Bryant's recurring or continuous violation.

January 1, 1994. Because Bryant's offense occurred in 1992, we will not evaluate his claim under Indiana Rule of Evidence 609 which bars the use of a prior conviction for impeachment purposes if the conviction is more than ten years old. Instead, we evaluate it under common law evidentiary principles.

**24.** At trial, Bryant claimed a former girlfriend had access to the home and that she could have been growing and using the marijuana. Based

on the lack of substantive evidence of this use or possession, we find, as did the trial court, that this contention has no merit.

**25.** The Indiana Court of Appeals reached the same conclusion under our current statute. *Plowman v. State* (1992), Ind.App., 604 N.E.2d 1219 (evidence of isolated or casual occurrence insufficient to sustain conviction for maintaining common nuisance).

At trial, the State presented evidence which proved Bryant possessed substantial amounts of marijuana, a complex growing system and a variety of drug paraphernalia employed to cultivate, preserve and use marijuana in his home. When coupled with Bryant's confession that he was growing the marijuana for his own use, this evidence was sufficient to prove continuing possession of a common nuisance.

## VI. Conclusion

For the foregoing reasons, we vacate Bryant's convictions for failure to pay the CSET, growing and cultivating marijuana and misdemeanor possession. We affirm his conviction for maintaining a common nuisance.

DICKSON and SELBY, JJ., concur.

DeBRULER, J., concurs and dissents with separate opinion to follow.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Justice, dissenting.

In *Department of Revenue of Montana v. Kurth Ranch,* — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the United States Supreme Court held that a proceeding initiated by the state of Montana to collect a tax on the Kurth family's marijuana crop was prohibited by the Double Jeopardy Clause where the Kurths had already been convicted in criminal court for possession of those drugs. Today our court holds that the mere assessment of a similar tax by the Indiana Department of State Revenue prior to trial for a related drug possession or dealing offense cuts off the ability of county prosecutors to obtain drug convictions and courts to impose sentences. I believe the majority today extends the protection of the Double Jeopardy Clause further than the United States Supreme Court requires.[26]

### I

While I do not agree in all the particulars, I do agree that the Indiana CSET bears enough resemblance to the Montana dangerous drug tax at issue in *Kurth Ranch* to implicate the Double Jeopardy Clause. While the courts of several other states have found their drug tax statutes sufficiently distinct from the Montana tax to withstand scrutiny under *Kurth Ranch, e.g., State v. Gulledge,* 257 Kan. 915, 896 P.2d 378 (1995); *State v. Lange,* 531 N.W.2d 108 (Iowa 1995); *Milner v. State,* 658 So.2d 500 (Ala.Civ.App. 1994); I find the majority's analysis persuasive that the CSET has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause. *Kurth Ranch,* — U.S. at —, 114 S.Ct. at 1945. *Accord, Stennett v. State,* 905 S.W.2d 612 (Tex.Ct. App.1995).

### II

Concluding that the Indiana CSET is sufficiently similar to the Montana dangerous drug tax to subject it to the constraints of the Double Jeopardy Clause does not mean, however, that this is the same case as *Kurth Ranch.* Indeed, this case is different from *Kurth Ranch* in at least one very important way—in *Kurth Ranch,* the taxpayer had first been convicted of the underlying drug offense and sought to avoid the subsequent imposition of the drug tax on double jeopardy grounds; here the taxpayer has first been assessed the drug tax and seeks to avoid punishment for the underlying drug offense on double jeopardy grounds.

The majority contends that the order in which the state seeks to impose the criminal and tax punishments makes no difference—that the tax can be either a first or a second punishment, but in either case it is considered punishment for double jeopardy pur-

---

**26.** "[A]n increasingly popular tactic of those criminally charged with violating state and federal drug laws and correlatively subjected to forfeiture proceedings is to concede in the forfeiture proceedings at the earliest opportunity and, thereafter, seek to avoid criminal sanctions by moving to dismiss pending criminal charges on double jeopardy grounds." *People v. Hellis,* 211 Mich.App. 634, 536 N.W.2d 587, 592 (1995). The majority opinion goes further by proscribing criminal sanctions once drug tax administrative proceedings are initiated; the accused need not concede anything to avoid prosecution.

poses. There is certainly authority for this position.[27] But I think we should tread cautiously in this area. First, the Montana tax could be imposed only after a criminal conviction and the *Kurth Ranch* majority expressly noted that it was not faced with "the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." *Kurth Ranch*, —— U.S. at ——, n. 21, 114 S.Ct. at 1947 n. 21. Second, the Supreme Court seems to emphasize the sequence in *Kurth Ranch*, several times making explicit reference to the fact that the imposition of the tax followed the imposition of the criminal sanction.[28] Third, as Justice DeBruler points out, the effect of holding that the tax can constitute a first punishment for double jeopardy purposes is to interdict a "power of the highest essential order," namely the power of the state to prosecute criminal behavior. In the absence of clear mandate from the Supreme Court, I think it highly inadvisable for us to hold that an administrative assessment of a tax can constitute a first punishment for double jeopardy purposes.[29]

**27.** *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1958 (Scalia, J., dissenting); *United States v. $405,089.23*, 33 F.3d 1210 (9th Cir.1994), *amended by order*, 56 F.3d 41 (1995); *United States v. Sanchez–Escareno*, 950 F.2d 193, 203 (5th Cir. 1991); F. Anthony Paganelli, "Constitutional Analysis of Indiana's Controlled Substance Excise Tax," 70 *Ind.L.J.* 1301, 1330 & n. 217 (1995). *But see United States v. $405,089.23*, 56 F.3d at 41 (opinion of Ryner, J., dissenting from denial of rehearing *en banc*, joined by six other judges); *United States v. Newby*, 11 F.3d 1143, 1145 (3d Cir.1993).

**28.** The Supreme Court's emphasis on the tax punishment constituting the *second* punishment is seen in the following passages:

This case presents the question whether a tax on the possession of illegal drugs assessed *after* the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense.

*Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1941 (footnote omitted) (emphasis supplied).

The *third* proceeding involved the assessment of the new tax on dangerous drugs.

*Id.* at ——, 114 S.Ct. at 1942 (emphasis supplied) (the first proceeding was the criminal prosecution and the second was a civil forfeiture action).

## III

The majority takes the position that *Kurth Ranch* requires that when a civil or administrative proceeding or sanction has the punitive characteristics that subject it to the constraints of the Double Jeopardy Clause, the established principles of Double Jeopardy jurisprudence apply regardless of whether the criminal prosecution and sentencing or the civil or administrative proceeding and sanction come first. Even if I agreed with the majority that *Kurth Ranch* prevents the state from prosecuting drug offenders if CSET has already been imposed—and I do not; see part II, *supra*—I can not agree with the way the majority seeks to implement this principle. The majority says that jeopardy attaches when the revenue department issues its assessment notice and demand. This cannot be right—the mere issuance of an administrative order cannot be sufficient to shut down completely the state's ability to prosecute drug offenders.

## A

The Double Jeopardy Clause is violated by (i) a second prosecution for the same offense after acquittal or conviction (which I will

This drug tax is not the kind of remedial sanction that may *follow* the *first* punishment of a criminal offense. Instead it is a *second* punishment within the contemplation of [the Double Jeopardy Clause] and therefore must be imposed during the first prosecution or not at all.

*Id.* at ——, 114 S.Ct. at 1948 (emphasis supplied). While I acknowledge that this last sentence lends support to the majority's view that the drug tax can constitute a first punishment, it did not in *Kurth Ranch* and, for the reasons discussed in the text of my dissent, I do not think it prudent to extend this principle in the absence of the Supreme Court explicitly so holding.

**29.** Several alternatives are available. First, we could hold that the tax becomes a first punishment only when ordered by a *court, i.e.,* only when the taxpayer has exercised his or her right to protest the assessment in court or the department of revenue has obtained judicial assistance in enforcing it. Second, we could hold that sentencing on the underlying criminal offense extinguishes any previously established CSET liability. Either of these approaches would be consistent with the outcome of *Kurth Ranch* and would not interfere with the power of our prosecutors to seek to bring drug possessors and dealers to justice.

refer to as "prosecution jeopardy"), or (ii) multiple punishments for the same offense (which I will refer to as "punishment jeopardy").[30] *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). And the factual patterns in this and the other cases before the court today generally involve three types of state actions: (i) a criminal prosecution for a drug possession or dealing offense; (ii) a criminal prosecution for the failure to pay the CSET; and (iii) an administrative (non-criminal) action to collect CSET due. Prosecution jeopardy arises or attaches in the first two types of actions at the time the jury is sworn or, in an action tried to the bench, at the time the fact finder begins to take evidence. *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 2160–61, 57 L.Ed.2d 24 (1978) (jury trial); *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (bench trial); *Maddox v. State* (1952), 230 Ind. 92, 98, 102 N.E.2d 225, 228 (jury trial); *State v. Proctor* (1984), Ind.App., 471 N.E.2d 707, 708 (bench trial). *See generally* Joseph G. Cook, 3 *Constitutional Rights of the Accused 2d* §§ 23:17–23:25 (1986 & Supp.1995). The cases are not so clear as to precisely when punishment jeopardy attaches but I have found no authority for holding that it attaches before an offender has commenced to serve a valid sentence. *See generally United*

*States v. DiFrancesco*, 449 U.S. 117, 134, 101 S.Ct. 426, 435–36, 66 L.Ed.2d 328 (1980); *Coleman v. State* (1986), Ind., 490 N.E.2d 711, 715; *Williams v. State* (1986), Ind.App., 494 N.E.2d 1001, 1004, *cert. denied* 481 U.S. 1054, 107 S.Ct. 2191, 95 L.Ed.2d 846 (1987); Arthur W. Campbell, *Law of Sentencing 2d* §§ 8:14–8:17 (1991 & Supp.1994).

But because the concept of administrative or civil sanctions in general, and a tax in particular, constituting jeopardy is so new to the law,[31] there is little guidance as to when prosecution jeopardy or punishment jeopardy attach in such context. Indeed, the majority's analysis on this point is quite abbreviated.[32] Yet if we are to hold that at the moment of attachment, the state is interdicted from pursuing a criminal prosecution, ascertaining that moment of attachment becomes a vital inquiry.

I think we start with the basic principles that the mere filing of charges or conduct of pre-trial proceedings are not enough to implicate prosecution jeopardy and that the mere pronouncement of sentence is not enough to implicate punishment jeopardy. As noted above, prosecution jeopardy does not attach, in a jury trial, until the jury is sworn, and, in a bench trial, until the fact finder begins to take evidence. I would analogize the admin-

**30.** In *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), Justice Scalia, writing for the majority, takes issue with Justice Souter who, in dissent, distinguishes between what I refer to as prosecution jeopardy and punishment jeopardy. Justice Scalia writes that "there is no authority, except *Grady [v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)], for the proposition that [double jeopardy] has different meanings in the two contexts." *Dixon*, 509 U.S. at 704, 113 S.Ct. at 2860. *Dixon* overruled *Grady*. However, the Scalia–Souter debate addressed substantive principles of double jeopardy law. I distinguish between prosecution jeopardy and punishment jeopardy only for what I think are obvious procedural differences in when jeopardy in respect of a prosecution attaches and when jeopardy in respect of punishment attaches.

**31.** The United States Supreme Court held for the first time that civil fines, forfeiture, and financial exactions styled as a tax can be penalties for crime in 1989, 1993, and 1994, respectively. *Montana Dep't of Rev. v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994)

(tax); *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (forfeiture); *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (civil fines).

**32.** The majority's only analysis on this point is that, at the point the department of revenue served the taxpayer with an assessment notice and demand, "Bryant faced more than a risk of being found guilty; he had actually been found guilty." The majority offers no authority for this proposition and I reject it. It seems to me tantamount to saying that when a prosecutor files criminal charges, a criminal defendant has actually been found guilty. In both instances, the assessment and filing of charges merely represents the first step in a statutorily-prescribed regime. That the department is authorized to seize the taxpayer's property immediately does not change the analysis for me. I discuss this issue in greater detail in *part III–C–2, infra*. And to continue my analogy to criminal procedure, the state is also entitled to impose substantial infringements on the criminally accused's liberty and property following the filing of criminal charges.

istrative procedure for enforcing the CSET to the criminal bench trial and would find the imposition of the CSET to constitute a prosecution jeopardy at the point, but not before, the taxpayer exercises his or her rights to appeal an assessment, a hearing has been convened, and the fact finder has begun to take testimony. Similarly, I would not find the imposition of the CSET to constitute a punishment jeopardy unless and until the taxpayer has begun to pay the assessment.[33]

### B

Indiana Code § 6–7–3–13 (1993) provides that the Department of Revenue shall proceed to assess and collect CSET due under Ind.Code § 6–8.1–5–3 (1993). Under 45 Ind.Admin.Code § 15–5–8 (1992), the taxpayer may protest the assessment within a prescribed period of time and request a hearing. If a hearing is requested, the department is required to follow the hearing procedures specified in 45 Ind.Admin.Code § 15–5–3. In contrast to the majority which holds that prosecution jeopardy attaches at the time the department makes its initial assessment, I would hold that no attachment occurs until the hearing or alternative procedures contemplated by 45 Ind.Admin.Code § 15–5–3 are convened and the fact finder has begun to take evidence.

The recent Colorado case of *People v. Litchfield*, 902 P.2d 921 (Colo.Ct.App.1995), *cert. granted* (Colo. Sep. 11, 1995), takes a similar approach to what I propose. Subsequent to defendants' arrests but prior to trial, the Colorado revenue department assessed defendants with controlled substances taxes and penalties. Defendants objected to the assessment and requested an administrative hearing. At the time of trial, the department had taken no action on the objections. Defendants moved to dismiss the criminal charges on grounds that the tax assessment was punishment and the double jeopardy

clauses prevented their being subjected to criminal punishment for the same conduct. *Id.* at 924. Although the majority today would grant such motions, the trial court in *Litchfield* found that jeopardy had not yet attached to the assessment because there had been "no final administrative determination of defendants' obligation to pay the tax and penalty." *Id.* The Colorado appellate court agreed. Assuming that the tax was punishment under *Kurth Ranch,* the court pointed out that:

> [T]here has been no hearing and thus no final determination of defendants' liability for the assessed tax. In addition, defendants have not paid any money to the state nor has the state taken any steps to collect the tax obligation allegedly owed.

> Accordingly, jeopardy has not yet attached and there has been no punishment by imposition of liability for the state tax. See *U.S. v. Sanchez–Escareno,* 950 F.2d 193 (5th Cir.1991) *cert. denied,* 506 U.S. 841, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992) (no jeopardy attaches to preclude the government from prosecuting defendants for drug importation offenses until defendants actually pay civil fines assessed against them or until the government sues to collect on notes executed by defendants for payment of such fines).

> Because defendants had not been subjected to punishment by imposition of a civil penalty for their alleged possession of marijuana, the trial court did not err when it found that the criminal prosecution did not subject them to multiple punishment in violation of the double jeopardy clauses.

*Id.* at 925. Note that the Colorado court finds no jeopardy attaching at least until a final determination of liability is made,[34] an even broader construction of attachment than I propose. I think attachment at the time the fact finder begins to receive evidence is a slightly better approach because it

---

**33.** I make this point because there will be cases where the taxpayer will not contest the assessment. *See part III–C–1, infra.*

**34.** In fact, the Colorado court suggests that jeopardy might not attach until the defendants actually paid money to the state or the state had taken steps to collect the tax obligation. *Litch-*

*field,* 902 P.2d at 924. *Cf. Ragin v. United States,* 893 F.Supp. 570, 574 (W.D.N.C.1995) (holding in forfeiture proceeding accompanying drug prosecution that "jeopardy attaches when the final judgment of forfeiture is entered, and not when the claim or answer is filed or the property seized.")

more closely tracks its criminal procedure analog.[35]

## C

The assessment of CSET raises two additional issues. First, what are the double jeopardy implications, if any, if the CSET is not contested? And, second, what are the double jeopardy implications if the revenue department, proceeding as permitted under the statute and regulation, seizes, or levies on and sells, the taxpayer's property?

### C–1

In cases where the taxpayer does not contest the assessment, I would find no prosecution jeopardy as nothing analogous to prosecution has occurred.[36] However, under *Kurth Ranch,* I believe that CSET's punitive characteristics that implicate the Double Jeopardy Clause would cause punishment jeopardy to attach at the point the taxpayer began to pay the tax. Perhaps the case best illustrating this situation is *United States v. Sanchez–Escareno,* 950 F.2d 193 (5th Cir. 1991) *cert. denied,* 506 U.S. 841, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992), cited by the Colorado court in *People v. Litchfield, supra.* In *Sanchez–Escareno,* three individuals had been arrested and assessed large civil fines by United States Customs officials for possession and attempted importation of marijuana. Criminal indictments based on the same conduct followed. The defendants did not protest the civil fines but instead acknowledged them by executing promissory notes. However, the notes had not been paid nor had the government attempted to collect the notes. The district court dismissed the indictments, concluding that punishment jeopardy attached at the point the defendants executed the promissory notes. *Sanchez–Escareno,* 950 F.2d at 194–95.

The Fifth Circuit reversed, reasoning as follows:

Here, the government has yet to subject the defendants to trial at all or to exact any form of punishment whatsoever. Defendants are presently in the same position as someone who has been charged in two criminal proceedings, but has not yet been tried or punished in either. If the defendants actually pay the civil fines, then any subsequent criminal prosecution would be double jeopardy. *See Ex parte Lange,* 18 Wall. 163, 85 U.S. 163, 21 Led. 872 (1873) (when defendant "fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone"). Likewise, if the government chooses to go forward with its prosecution of the defendants, jeopardy would attach when the jury is empaneled and sworn, as it would in any criminal case. *See Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). Finally, if the government attempts to collect on the notes, jeopardy would attach when the court begins to hear evidence in that action. *See id.* But at this point, defendants' contentions

---

**35.** Additional support for this approach is found in the following hypothetical offered by Judge Easterbrook in an influential administrative forfeiture case:
> Suppose the civil forfeiture gets to trial first. The United States will try to show that the money was used in an illegal drug transaction. At the beginning of the hearing, when evidence is first presented to the trier of fact in a proceeding seeking to impose a penalty for crime, jeopardy attaches.

*United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir.1994) (citations omitted).

**36.** *See United States v. Baird,* 63 F.3d 1213 (3d Cir.1995), where defendant Baird contended that a drug prosecution subsequent to an uncontested administrative forfeiture proceeding arising from the same incident subjected him to double jeopardy, the court observed that "[w]ithout risk of a determination of guilt, jeopardy does not attach.... Because Baird failed to contest the forfeiture, ... Baird was not, and could not have been, placed at risk by that process." *See also United States v. Morgan,* 51 F.3d 1105 (2d Cir.1995), where defendant Morgan contended that a bank fraud prosecution subsequent to his settlement of civil proceedings brought by the United States Department of Treasury's Office of Thrift Supervision subjected him to double jeopardy, the court noted that "Morgan cannot claim prosecution for the same offense arising after an acquittal or conviction because the initial civil proceeding did not result in either." *Contra, United States v. Ursery,* 59 F.3d 568, 571 (6th Cir.1995).

under the Double Jeopardy Clause are misplaced.

*Sanchez–Escareno,* 950 F.2d at 202–203.

## C–2

Indiana statutes and regulations provide that if the CSET is not immediately paid, the department "may levy on and sell the person's property." Ind.Code § 6–8.1–5–3 (1993); 45 Ind.Admin.Code § 15–5–8. If the department exercises this option, does punishment jeopardy attach? In *People v. Krizek,* 271 Ill.App.3d 533, 207 Ill.Dec. 857, 648 N.E.2d 313 (1995), defendant appealed the trial court's denial of his motion to dismiss drug charges on grounds that the prior seizure of his home to commence civil forfeiture proceedings constituted punishment jeopardy. The Illinois court analyzed federal court decisions from Oregon and Illinois that concluded that the seizure of a defendant's property does not, by itself, constitute punishment for purposes of the double jeopardy clause:

> [A]lthough the seizure of real property under the Forfeiture Act marks the beginning of the civil forfeiture process, the actual seizure itself has limited legal significance. The act of seizure neither extinguishes the ownership rights of claimants to the property, nor does it vest title in the State. The respective ownership rights of the parties remain unaltered until such time as the trial court enters its final judgment. Until final judgment is entered, the claimant has the opportunity to retain his ownership rights in the property. Common sense dictates that it is the deprivation of ownership, not the deprivation of the unencumbered use of the property, that determines when punishment for double jeopardy purposes occurs. The State's seizure of defendant's property, therefore, does not constitute punishment for double jeopardy purposes (*see [United States v.] Stanwood,* 872 F.SUPP. [791,] 799 [ (D.Or. 1994) ]; [*United States v.*] *Messino,* 871 F.SUPP. [1027,] 1032 [ (N.D.Ill.1994) ]), and the State's attempt to prosecute defendant under the Illinois Criminal Code does not contravene the double jeopardy clause.

*Krizek,* 271 Ill.App.3d at 538, 207 Ill.Dec. at 860, 648 N.E.2d at 316. I think this reasoning is sound and would find that the seizure of a taxpayer's property by the revenue department does not constitute punishment. However, the sale of that property is a more difficult question, one which should properly await a specific case in which the issue is argued.

## C–3

Lest we become so consumed in thinking about drug taxes as punishment that we forget the general rule, it is worth recalling that the general rule is that a tax is *not* punishment and only becomes so when, "[t]aken as a whole," it is "too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948. I mention this in the context of the two preceding sections because it is altogether plausible to me that a taxpayer may pay a portion of CSET assessed, or the revenue department may levy upon and sell an amount of property, which would merely reimburse the government for its actual costs arising from the taxpayer's criminal conduct. *See id.* at ——, 114 S.Ct. at 1945 (*quoting United States v. Halper,* 490 U.S. 435, 449–450, 109 S.Ct. 1892, 1902–03, 104 L.Ed.2d 487 (1989)). Such a payment or levy and sale would not be sufficient in my view to constitute punishment jeopardy. Only to the extent that the amount paid or levied upon and sold in excess of that deemed reasonably remedial should be considered to be punishment. *Cf. United States v. Morgan,* 51 F.3d 1105 (2d Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995) (double jeopardy not implicated in Office of Thrift Supervision accompanying bank fraud prosecution where defendant did not make threshold showing that civil sanction was "overwhelmingly disproportionate to the government's damages and expenses"); *Ragin v. United States,* 893 F.Supp. 570 (double jeopardy not implicated in civil forfeiture proceeding accompanying drug prosecution where "the forfeiture was proportional to the damages caused by Ragin's conduct, and the forfeiture was essentially remedial").

## D

If the majority is right that administrative imposition of a tax which is a punishment for double jeopardy purposes can cut off the state's ability to prosecute and sentence, then I think at a minimum the notion that jeopardy attaches at the time of assessment should be abandoned. Rather, I think analogies to the criminal procedure and the newly emerging precedents in the area of civil fines, forfeitures, and taxes indicate the following: First, a first prosecution should not attach until the accused contests the assessment and evidence is taken at an administrative hearing. At this point, the ability of the state to prosecute for the underlying criminal offense would be cut off. Second, if the accused does not contest the assessment such that no adjudicatory proceedings are commenced, there is no prosecution jeopardy and the state is free to proceed with criminal prosecution. Third, if the accused pays a portion of the assessment in a sufficient amount to constitute punishment,[37] punishment jeopardy attaches and the ability of the state to sentence for the underlying criminal offense would be cut off.

### Conclusion

I agree with the majority that the Indiana CSET has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause. *See part I, infra.* But I find nothing in *Kurth Ranch* that compels us to prohibit the prosecution of alleged drug offenders merely because the revenue department asserts a CSET obligation on the part of the alleged offender first. *See part II, infra.*

Assuming the established principles of Double Jeopardy jurisprudence apply regardless of whether the criminal prosecution and sentencing or the imposition of CSET comes first, I would hold that (i) there is no prosecution jeopardy unless the taxpayer contests the assessment and a hearing is convened to adjudicate the protest, *Litch-*

*field,* 902 P.2d at 925; prosecution jeopardy attaches when evidence is first presented to the trier of fact, *Torres,* 28 F.3d at 1465; and (ii) there is no punishment jeopardy unless the taxpayer pays at least a portion of the tax, *Sanchez–Escareno,* 950 F.2d at 202. *See part III, infra.* Certainly, there is nothing in *Kurth Ranch* that is inconsistent with this approach. In that case, Montana's tax authorities assessed the dangerous drug tax and the taxpayers contested the assessments in administrative proceedings. *Kurth Ranch,* —— U.S. at —— – ——, 114 S.Ct. at 1942–43. Thus more happened in *Kurth Ranch* than the mere initiation of a drug tax assessment proceedings the taxpayers actually contested the assessment in administrative proceedings.

Based on the foregoing analysis, I would affirm Bryant's convictions. No claim is made that Bryant contested the assessment such that an adjudication of liability was conducted. As such, no prosecution jeopardy attached and the state was free to prosecute him on the criminal charges. Nor is any claim made that Bryant voluntarily paid a sufficient amount of the tax to constitute punishment.[38] As such, no punishment jeopardy attached and the state was free to punish him on the criminal charges. I agree with the majority's analysis of the non-CSET issues in Bryant's appeal.

DeBRULER, Justice, concurring and dissenting.

In *U.S. v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) and *Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the complaints had already been punished as a result of a prior criminal prosecution when the governments exercised their taxing and sanctioning authority. The Supreme Court ruled in both cases that the exercise of that authority could constitute a second punishment in violation of double jeopardy. Here, by contrast, the state exercised its taxing and sanctioning

---

**37.** Or, arguably, such an amount of property is levied upon and sold, depriving the accused of his or her ownership thereof. *See part III–C–2, supra.*

**38.** Bryant may be able to establish that the seizure of his property following assessment constituted a change in ownership such that he could argue punishment. That issue, left open in *part III–C–2, supra,* is not before us.

authority before appellant Bryant was placed in jeopardy in court. The manner in which that taxing and sanctioning authority was exercised by Indiana revenue agents was normal for processes followed where controlled and regulated substances are involved. In my view, case law does not command the conclusion that those processes constituted a first punishment under the Double Jeopardy Clause. I would therefore affirm all of appellant's convictions.

To be sure, the legal signposts do not all point in the same direction. The large amount of the controlled substance excise tax and the fact that the tax is upon an illegal activity do tend to support the conclusion that it is a first jeopardy punishment under the Double Jeopardy Clause. However, those factors are lessened in value since the tax promotes the legitimate tax purposes of deterring a socially undesirable activity and raising revenue from what we know can be a highly profitable, clandestine, commercial enterprise. While the tax looks radically high as applied to marijuana, it looks less radical when applied to other controlled substances such as LSD and the opium derivatives, which are lighter in weight and more expensive on the black market.

In prosecutions of unlawful possession of other highly regulated substances such as liquor and cigarettes, it is ordinary for the criminal prosecution for possession of untaxed liquor or cigarettes to be viewed only as a first jeopardy even though the tax with penalty was paid during the pendency of the criminal proceeding. *See* Ind.Code Ann. § 7.1–5–4–1 (West 1982); Ind.Code Ann. § 6–7–1–24 (West 1989). Such payment is a wise choice since it might persuade a prosecutor not to pursue a conviction, or might serve as a mitigator in the judicial determination of a proper sentence. Such payment is not regarded as a first jeopardy punishment.

Finally, an assessment issued from within the revenue department operates under the majority opinion to foreclose exercise of the police power expressed in the tax statute via the local prosecuting attorney. That power is of the highest essential order, and I am

reluctant to embrace such a shift of it, except in the clearest of circumstances.